Michael John YEAGER, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–99–105–CR.

Court of Appeals of Texas, Waco.

June 21, 2000.

568

Davis G. McCown, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., Charles M. Mallin, Asst. Dist. Atty., John A. Stride, Asst. Crim. Dist. Atty., Fort Worth, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

BILL VANCE, Justice.

Does article 14.03(g) of the Code of Criminal Procedure authorize a peace officer to conduct an investigative detention while outside of his geographic jurisdiction to determine if there is probable cause to believe that an offense has been "committ[ed] within [his] presence or view"? The trial court concluded that it does and denied Michael Yeager's motion to suppress. We decide that an officer must have probable cause to arrest before he can detain a citizen under article 14.03 when outside of his geographic jurisdiction; thus, we find that the investigative detention by the police in this case was impermissible. We will reverse the judgment.

### The Stop, Arrest, and Prosecution

At approximately 10:00 p.m. on Friday, September 11, 1998, two Pantego Village police officers, Brian Harris and Jon Codu-

ti, observed Yeager leave the parking lot of a bar on Arkansas Lane. As Yeager made his turn onto Arkansas Lane, the officers could see that he turned too wide, running off of the paved portion of the road and nearly driving his car into a ditch that bordered the street. At the point where Yeager entered Arkansas Lane, both the street and the ditch were within the Pantego Village municipal limits.

Harris believed he could stop Yeager to investigate whether he was driving while intoxicated at the time that Yeager almost ran into the ditch. However, the officers did not initiate such a stop in Pantego Village so that Coduti, a reserve officer in training, could observe Yeager and evaluate his driving. The officers followed Yeager along Arkansas Lane and into the City of Arlington, crossing the city-limits line approximately one-sixteenth to one-eighth of a mile after they began following Yeager. Once in Arlington, Yeager turned north on Fielder Road. Harris and Coduti continued to follow Yeager, going deeper into Arlington. Shortly before Pioneer Parkway, Yeager suddenly swerved from the inside lane of the road to the outside lane, narrowly missing another vehicle. Believing that Yeager was a danger to others on the road, Harris decided to stop him so that the officers could investigate whether Yeager was driving while intoxicated. The officers activated their overhead emergency lights, and ultimately their siren as well, and stopped Yeager approximately one-half to three-fourths of a mile into the City of Arlington. Based on Yeager's appearance, speech, odor of an alcoholic beverage, and performance in a series of field sobriety tests, Harris concluded that he had probable cause to arrest Yeager for the offense of driving while intoxicated. TEX. PEN.CODE ANN. § 49.04 (Vernon Supp.2000). After his arrest, the officers took Yeager to the Arlington City Police Department for an intoxilyzer test and videotaping because the City of Arlington had the necessary equipment, and then back to the Pantego Village Police station for processing.

Yeager was charged with DWI as a result of the investigation by Harris and Coduti. He sought to suppress all of the evidence obtained as a result of the investigation on the theory that the officers did not have the authority to detain or arrest him outside of their own geographic jurisdiction. At the hearing on his motion to suppress, Officers Harris and Coduti testified. The parties stipulated both that Pantego Village is a Type "B" municipality [1] and that Yeager was arrested without a warrant. After the trial court denied his written pretrial motion to suppress, Yeager pled guilty and this appeal followed.

### *The Appeal*

Before us, Yeager again asserts that evidence obtained after he was stopped should have been suppressed because the officers did not have the authority to detain him outside of their own geographic jurisdiction. In reply, the State concedes that the officers were outside their geographic jurisdiction, but argues that both the detention and arrest of Yeager were lawful under article 14.03 of the Code of Criminal Procedure or, alternatively, the "hot pursuit" doctrine. TEX.CODE.CRIM. PROC. ANN. art. 14.03 (Vernon Supp.2000); *Preston v. State,* 700 S.W.2d 227, 229 (Tex. Crim.App.1985).

Because Yeager complains about the trial court's ruling on a motion to suppress, we apply the standard of review set out in *Guzman v. State,* 955 S.W.2d 85, 87 (Tex.Crim.App.1997). *Carmouche v. State,* 10 S.W.3d 323, 327 (Tex.Crim.App.

---

1. Any general-law municipality which had been incorporated under Title 28, Chapter 11 of the Revised Statutes in operation on the day before the effective date of the Local Government Code was converted to a Type "B" municipality by the Code. *See* TEX. LOC.

GOV'T CODE ANN. § 5.002 (Vernon 1999). Under current standards, a Type "B" city must have between 201 and 9,999 inhabitants and contain no more than nine square miles of surface area. *Id.* §§ 5.901(3), 7.001.

2000); *Harris v. State*, 994 S.W.2d 927, 929–30 (Tex.App.—Waco 1999, pet. ref'd). We give almost total deference to the trial court's determination of historical fact, but review its application of the law of search and seizure *de novo*. *Id.* The trial court did not make explicit findings of fact to support its ruling; thus, if necessary, we are to assume that it made whatever findings that the record supports to buttress its ruling. *Carmouche*, 10 S.W.3d at 328.

■ Resolution of the issue of the officers' extra-jurisdictional authority turns on the application of Texas common law and her statutes, not on federal constitutional principles. The states are free to impose greater restrictions on their law enforcement agents than are required by the United States Constitution. *Milton v. State*, 549 S.W.2d 190, 192 (Tex.Crim.App. 1977). Texas has done so in a number of ways, one of which is particularly relevant to this proceedings—Texas common law and her statutes limit *where* a police officer may exercise the authority of his office.

### The Limits of the Officers' Jurisdiction

■ As a general matter, peace officers may exercise law enforcement powers only within their jurisdiction.[2] *Dominguez v. State*, 924 S.W.2d 950, 953–54 (Tex. App.—El Paso 1996, no pet.); *cf.* Tex.

CODE CRIM. PROC. ANN. art. 2.13 (Vernon Supp.2000) ("It is the duty of every peace officer to preserve the peace *within the officer's jurisdiction.*" (Emphasis added)). The scope of an officer's jurisdiction must be found in a statute or be controlled by common law. *Angel v. State*, 740 S.W.2d 727, 732 (Tex.Crim.App.1987); *see also* TEX.CODE CRIM. PROC. ANN. art. 1.27 (Vernon 1977). There are no statutes specifically controlling the jurisdiction of a police officer of a Type "B" municipality such as the officers of Pantego Village. *See* TEX. LOC. GOV'T CODE ANN. Chapter 341 (Vernon 1999 & Supp.2000); Reamey & Harkins, *Warrantless Arrest Jurisdiction in Texas: An Analysis And A Proposal*, 19 ST. MARY'S L.J. 857, 880 (1988). Therefore, the jurisdiction of a Type "B" municipality police officer is controlled by common law. At common law, a city police officer's authority ends at the city limits. *Landrum v. State*, 751 S.W.2d 530, 531 (Tex.App.— Dallas 1988), *pet. ref'd per curiam*, 795 S.W.2d 205 (Tex.Crim.App.1990); *Love v. State*, 687 S.W.2d 469, 471 (Tex.App.— Houston [1st Dist.] 1985, pet. ref'd), *overruled on other grounds, Angel v. State*, 740 S.W.2d 727 (Tex.Crim.App.1987). Thus, the State has correctly conceded that Harris and Coduti were outside of their jurisdiction when they detained Yeager for questioning.[3] Because Harris and Coduti

2. In this opinion, we use the term "jurisdiction" to refer to the geographic scope of a peace officer's duties and powers. *Angel v. State*, 740 S.W.2d 727, 734 (Tex.Crim.App. 1987). "Authority," on the other hand, refers to the duties and powers granted by the Code of Criminal Procedure, which an officer may or may not exercise outside of his jurisdiction depending on the terms of the statute granting the power or imposing the duty. *Id.* at 732.

3. This is not a case controlled by the Court of Criminal Appeals' decision in *Angel v. State* that city police officers have county-wide jurisdiction. *Angel*, 740 S.W.2d at 736. In *Angel*, the Court construed Revised Civil Statutes Articles 998 and 999, which applied to municipalities incorporated under Chapters 1–10 of Title 28 of the Revised Civil Statutes, a class of municipalities that are now referred to as Type "A" municipalities. TEX. LOC. GOV'T CODE

ANN. § 5.001 (Vernon 1999); *Angel*, 740 S.W.2d at 732–35. However, the parties here stipulated that the officers involved were on the police force of a Type "B" municipality, and the evidence presented to the trial court showed that Pantego Village was incorporated under Title 28, Chapter 11 of the Revised Statutes, confirming the stipulation. TEX. LOC. GOV'T CODE ANN. § 5.002. Thus, Pantego Village police officers, as officers of a Type "B" municipality, would not have county-wide jurisdiction under *Angel*.

Furthermore, the continued viability of the specific jurisdictional holding in *Angel* may be open to question. The Court based its decision on precise language in Articles 998 and 999 equating the jurisdiction of city police officers with that of the city marshal, whose jurisdiction matched that of the county sheriff. *Angel*, 740 S.W.2d at 733. That language was carried over into the Local Government

were outside of their jurisdiction, before we can sustain the legality of the detention and arrest we must find either (1) the legislature has extended these officers' geographic authority by statute or (2) a common-law basis for such an extension. *See Angel,* 740 S.W.2d at 732; *Landrum,* 751 S.W.2d at 531.

### Article 14.03: A Limited Grant of Extra-Jurisdictional Authority

 We turn first to the Texas statutes to determine if the Legislature has extended these officers' geographic authority. Subsections (d) and (g) of Article 14.03 of the Texas Code of Criminal Procedure are authority-extending provisions. These subsections provide:

Art. 14.03. Authority of peace officers.

\* \* \*

(d) A peace officer who is outside his jurisdiction may arrest, without warrant, a person who commits an offense within the officer's presence or view, if the offense is a felony, a violation of Title 9, Chapter 42, Penal Code, a breach of the peace, or an offense under Section 49.02, Penal Code. A peace officer making an arrest under this subsection shall, as soon as practicable after making the

arrest, notify a law enforcement agency having jurisdiction where the arrest was made. The law enforcement agency shall then take custody of the person committing the offense and take the person before a magistrate in compliance with Article 14.06 of this code.

\* \* \*

(g) A peace officer listed in Subdivision (1), (2), (3), (4), or (5), Article 2.12,[⁴] who is licensed under Chapter 415, Government Code, and is outside of the officer's jurisdiction may arrest without a warrant a person who commits any offense within the officer's presence or view, except that an officer who is outside the officer's jurisdiction may arrest a person for a violation of Subtitle C, Title 7, Transportation Code, only if the officer is listed in Subdivision (4), Article 2.12. A peace officer making an arrest under this subsection shall as soon as practicable after making the arrest notify a law enforcement agency having jurisdiction where the arrest was made. The law enforcement agency shall then take custody of the person committing the offense and take the person before a magis-

Code when the provisions were codified in 1987. However, the Legislature changed that specific language in 1995. Now, a Type "A" city police officer's jurisdiction is that "granted to or imposed on a peace officer by the Code of Criminal Procedure" and a Type "A" city marshal's jurisdiction is the "jurisdiction ... a peace officer has under the Code of Criminal Procedure." Tex Loc. Gov't Code Ann. §§ 341.001(e)(1), 341.021(e) (Vernon 1999). We need not determine whether the current version would support the same holding as that in *Angel* because the officers in this proceeding were on the police force of a Type "B" municipality.

4. These subsections of Article 2.12 of the Code of Criminal Procedure provide:

The following are peace officers:

(1) sheriffs, their deputies, and those reserve deputies who hold a permanent peace

officer license issued under Chapter 415, Government Code;

(2) constables, deputy constables, and those reserve deputy constables who hold a permanent peace officer license issued under Chapter 415, Government Code;

(3) marshals or police officers of an incorporated city, town, or village, and those reserve municipal police officers who hold a permanent peace officer license issued under Chapter 415, Government Code;

(4) rangers and officers commissioned by the Public Safety Commission and the Director of the Department of Public Safety;

(5) investigators of the district attorneys', criminal district attorneys', and county attorneys' offices[.]

Tex.Code Crim. Proc. Ann. art. 2.12 (Vernon Supp.2000).

trate in compliance with Article 14.06.

TEX.CODE CRIM. PROC. ANN. art. 14.03(d), (g). These sections apply to Officers Harris and Coduti because police officers of an incorporated city, town or village are included within the definition of "peace officers" in subsection (3) of Article 2.12 of the Code of Criminal Procedure. *Id.* art. 2.12(3) (Vernon Supp.2000). Therefore, Harris and Coduti had the authority to *arrest* Yeager in Arlington if any offense other than a traffic violation[5] occurred within their presence or view.

■ An *arrest* under these sections requires probable cause to believe that an offense has been committed. *See Amores v. State,* 816 S.W.2d 407, 413 (Tex.Crim. App.1991); *Zayas v. State,* 972 S.W.2d 779, 788 (Tex.App.—Corpus Christi 1998, pet. ref'd). The plain language of the statute, providing that the offense must occur "within the officer's presence or view," appears to add the requirement that the officer base her probable-cause determination on personal knowledge, not second hand information presented by a third party. *See Thomas v. State,* 864 S.W.2d 193, 196 (Tex.App.—Texarkana 1993, pet. ref'd). However, because all of the information that Harris and Coduti acted on came from their personal observations we need not decide if the statute requires "personal-knowledge" probable cause. Rather, we assume that probable cause from any source would satisfy its provisions. *See Amores,* 816 S.W.2d at 413.

Neither Harris nor Coduti testified to facts that would establish probable cause to arrest Yeager at the time of the initial detention in Arlington. In fact, Harris specifically testified that they did not have probable cause to arrest Yeager until after the stop. Thus, the record conclusively establishes that the officers developed probable cause to arrest Yeager for driving while intoxicated only after the detention.

■ An unlawful detention cannot be justified by the evidence obtained as a result of the detention. *See State v. Ballard,* 987 S.W.2d 889, 892 (Tex.Crim.App. 1999); *Gurrola v. State,* 877 S.W.2d 300, 302 (Tex.Crim.App.1994). For this reason, the focus of our inquiry must remain on the statutory authority of the officers to detain Yeager outside of their jurisdiction in the absence of probable cause to arrest him. *See Angel,* 740 S.W.2d at 732; *Landrum,* 751 S.W.2d at 531.

### Article 14.03 Authorizes Only an Arrest by the Plain Meaning of its Terms

■ We do not believe that article 14.03 itself grants a peace officer the right to conduct an investigative detention outside of her jurisdiction. On its face, the statute specifically grants only the authority to "arrest," a term that is both defined by statute and recognized by case law as having a specific meaning. TEX.CODE CRIM. PROC. ANN. art. 15.22 (Vernon 1977); *Johnson v. State,* 912 S.W.2d 227, 235–236 (Tex. Crim.App.1995) (distinguishing between an arrest and an investigative detention). When analyzing the meaning of a statute, we must give effect to the plain meaning of the statute's language unless that plain meaning would lead to absurd consequences that the Legislature could not possibly have intended. *Cannady v. State,* 11 S.W.3d 205, 217 (Tex.Crim.App.2000); *Boykin v. State,* 818 S.W.2d 782, 785 (Tex. Crim.App.1991). Limiting the authority of an officer who is out of his own bailiwick to arrests based on probable cause is not an absurd consequence that could not have

---

**5.** Article 14.03(g) specifically denies officers other than those commissioned by the Public Safety Commission and the Director of the Department of Public Safety the authority to arrest outside of their jurisdiction for violations of Subtitle C, Title 7 of the Transportation Code. TEX.CODE CRIM. PROC. ANN. art. 14.03(g) (Vernon Supp.2000); TEX. TRANSP. CODE ANN. § 541.001 *et seq.* (Vernon 1999 & Supp.2000). This portion of the Transportation Code, entitled "Rules of the Road," generally governs the operation of motor vehicles on the public roadways of the state.

been intended. We can readily understand why the Legislature would choose not to allow an officer, who may be in plain clothes driving a private vehicle a thousand miles away from his home jurisdiction, the authority to conduct investigative detentions at any time that he reasonably suspects criminal activity may be afoot.

### Interpretations, Applications, and the Legislative History of Article 14.03 Recognize Its Limited Grant of Authority

Furthermore, our conclusion that the authority conferred by section 14.03 is limited to making an actual arrest based on probable cause is supported by authorities other than the plain language of the statute. The Court of Criminal Appeals recently considered whether cocaine purchased by an officer in the course of an undercover investigation outside of his jurisdiction should have been suppressed as "evidence obtained ... in violation of the ... laws of the State of Texas" under article 38.23 of the Code of Criminal Procedure. TEX.CODE.CRIM. PROC. ANN. art. 38.23 (Vernon Supp. Pamp.2000); *Chavez v. State*, 9 S.W.3d 817, 818 (Tex.Crim.App. 2000). The Court ultimately concluded that Chavez did not have standing to complain about the seizure of the cocaine because her rights were not violated by the purchase[6] and that the cocaine had not been "obtained" in violation of the law. *Chavez*, 9 S.W.3d at 819, 820. The Court did not rely on article 14.03 as authority for the officer to conduct the extra-jurisdictional investigation of Chavez. Moreover, two concurring judges appear to have acknowledged that the officer was acting illegally (*i.e.*, without authorization by the Code of Criminal Procedure) when he purchased the cocaine, *id.* at 820 (Keller, J. concurring), and the two dissenting judges specifically concluded that article 14.03 did not apply because Chavez complained of the officer's "investigation of her, not her arrest[.]" *Id.* at 829 (Holland,

J., dissenting). Thus, we believe that the Court of Criminal Appeals has recognized, although without explicitly holding, that article 14.03 authorizes only extra-jurisdictional arrests, not investigations. *Id.* at 819–20.

Second, other interpretations of article 14.03 limit an officer's authority. The Texas Attorney General considered in Opinion No. DM–77 whether article 14.03 granted state-wide investigative authority to a county sheriff. Op. Tex. Att'y Gen. No. DM–77 (1992). Observing "the thrust of article 14.03(d) is to define rather narrowly the limits of a peace officer's authority outside his own jurisdiction," the Attorney General concluded that "a sheriff does not have any general authority to conduct investigations outside his county." *Id.* at 2, 3.

■ Similarly, in *Thomas* the Texarkana Court of Appeals found, in effect, that article 14.03 does not extend an officer's authority other than to make an arrest within the strict parameters of the article. *Thomas*, 864 S.W.2d at 193. There, the defendant was charged with aggravated assault arising out of his confrontation with an out-of-county police officer. *Id.* at 195. A witness told the officer that Thomas had tried to steal several tires. *Id.* Thomas attacked the officer with a knife when the officer attempted to detain him. *Id.* Because the officer acted only upon the statement of the witness, not upon his personal observation, the court found that the officer's authority was that of a private citizen during the first confrontation, not that of a peace officer under article 14.03(d). *Id.* at 196. However, a private citizen's statement to an officer that reports an offense and identifies the offender is sufficient to establish probable cause to arrest. *Cornejo v. State*, 917 S.W.2d 480, 483 (Tex.App.—Houston [14th Dist.] 1996, pet. ref'd). Such a statement would plainly suffice to establish reasonable suspicion to detain a person for inves-

---

6. Chavez had not alleged that the purchase of the cocaine violated any of her rights. *Chavez*

*v. State*, 9 S.W.3d 817, 818 (Tex.Crim.App. 2000).

tigation. *See State v. Stolte*, 991 S.W.2d 336, 340–41 (Tex.App.—Fort Worth 1999, no pet.). Thus, because the Texarkana Court found that the officer was acting as a private citizen when he first approached Thomas, we believe it necessarily found that the officer was not authorized by article 14.03 to make an investigative detention.

Finally, we believe that the legislative history of the 1995 amendment to article 14.03, which added subsection (g), supports the conclusion that the Legislature did not intend to extend state-wide police power to every enumerated peace officer in Texas. As initially submitted, the bill included a provision which would have amended article 2.13 to provide that peace officers had the duty to "preserve the peace within this state." Tex. H.B. 2614, 74th Leg., R.S. (1995). However, that language was amended out of the bill before passage. Act of May 28, 1995, 74th Leg., R.S., ch. 829, 1995 Tex. Gen. Laws 4213–14. This is some evidence that the Legislature did not intend to extend state-wide investigative authority to the officers when it added article 14.03(g).

### Other Possible Statutory Sources for Extra–Jurisdictional Authority

■ There are several other statutory "candidates" for the source of an officer's authority to make extra-jurisdictional investigative detentions. Officers arresting under 14.03 are "justified in adopting all the measures which [they] might adopt in cases of arrest under warrant[.]" TEX. CODE CRIM. PROC. ANN. art. 14.05 (Vernon Supp.2000). This statute, however, only applies in situations where "arrests may be lawfully made without warrant" under Chapter 14. *Id.* Because article 14.03 requires probable cause before an officer may detain a suspected offender outside of the officer's jurisdiction, an extra-jurisdictional arrest may not be "lawfully made" when the original detention is based on less than probable cause. Thus, this article does not serve to lessen the degree of

suspicion necessary under article 14.03 to support the officers' extra-jurisdictional actions.

■ Similarly, article 2.13 of the Code of Criminal Procedure, which provides the "duties and powers" of peace officers, does not support Yeager's detention. TEX.CODE CRIM. PROC. ANN. art. 2.13. In relevant part, the statute provides:

Art. 2.13. Duties and powers

(a) It is the duty of every peace officer to preserve the peace within the officer's jurisdiction. To effect this purpose, the officer shall use all lawful means.

(b) The officer shall:

(1) in every case authorized by the provisions of this Code, interfere without warrant to prevent or suppress crime;

\* \* \*

(4) arrest offenders without warrant in every case where the officer is authorized by law, in order that they may be taken before the proper magistrate or court and be tried.

*Id.* We do not believe that this section applies to the detention of Yeager for several reasons. First, subsection (b) does not create a duty or a power independent of subsection (a). Subsection (b) merely lists the "lawful means" which an officer has the duty to employ in keeping the peace in his jurisdiction. Secondly, to determine that subsection (b) supports the officers' detention of Yeager begs the question. The issue *is* whether the officers' actions are "authorized by the provisions of this Code" or are "authorized by law." Thus, article 2.13 does not support a conclusion that the officers were authorized to detain Yeager outside of their jurisdiction on anything less than probable cause.

■ Article 14.01(b), permitting a peace officer to arrest an offender for any offense committed in his presence or within his view, appears to grant state-wide

authority. Tex.Code Crim. Proc. Ann. art. 14.01(b) (Vernon 1977). However, the Court of Criminal Appeals has limited the application of this article to actions taken within the officer's jurisdiction because the statute does not define the geographic scope of the authority it bestows. *Angel*, 740 S.W.2d at 732; *Dominguez*, 924 S.W.2d at 954; *Reichaert v. State*, 830 S.W.2d 348, 350 (Tex.App.—San Antonio 1992, pet. ref'd). Therefore, article 14.01(b) does not validate the extra-jurisdictional detention of Yeager by the Pantego Village police officers.

Finally, some cases have analyzed actions by peace officers outside of their jurisdiction under article 14.01(a), which authorizes any person to arrest for any felony or breach of the peace which occurs within their presence or view, as if the officer were a private citizen. Tex. Code.Crim. Proc. Ann. art 14.01(a); *Romo v. State*, 577 S.W.2d 251, 253 (Tex.Crim. App. [Panel Op.] 1979); *Garner v. State*, 779 S.W.2d 498, 500–01 (Tex.App.—Fort Worth 1989), *pet. ref'd per curiam*, 785 S.W.2d 158 (Tex.Crim.App.1990). Driving while intoxicated is a breach of the peace. *Romo*, 577 S.W.2d at 253; *Trent v. State*, 925 S.W.2d 130, 133 (Tex.App.—Waco 1996, no pet.). However, an arrest by a private citizen must be based on probable cause. *Trent*, 925 S.W.2d at 133; *McGuire v. State*, 847 S.W.2d 684, 686 (Tex.App.—Houston [1st Dist.] 1993, no pet.). Private citizens do not have the authority to make an investigative detention under article 14.01. *Garner*, 779 S.W.2d at 501. Thus, even if we were to analyze Yeager's detention as if the officers were acting in a private capacity, we would still find the investigative detention illegal.

In summary, we can find no statute which would validate the actions of the officers in detaining Yeager outside their jurisdiction, although we have considered several provisions. No other provision has been suggested by the State. Thus, we conclude that the officers did not have statutory authority to conduct an investigative detention outside the limits of Pantego Village. We turn, then, to the common-law basis for the authority proposed by the State.

### Non–Statutory Basis for the Detention: The "Hot Pursuit" Doctrine

As we have noted, a city police officer's authority ends at the city limits under Texas common law. *Landrum*, 751 S.W.2d at 531. The State argues, however, that the officers were entitled to detain Yeager under the common law "hot pursuit" doctrine. Under this principle, officers who are drawn outside of their jurisdiction while in "hot pursuit" of a fleeing suspect do not lose their authority to detain and arrest the suspect. *Preston*, 700 S.W.2d at 229; *Duenez v. State*, 735 S.W.2d 563, 565 (Tex.App.—Houston [1st Dist.] 1987, pet. ref'd). The test for hot pursuit focuses on the immediate and continuous nature of the pursuit, and it applies to situations involving a continuous pursuit where there is no break in the police effort to apprehend or in the subject's effort to escape. *LaHaye v. State*, 1 S.W.3d 149, 153 (Tex.App.—Texarkana 1999, pet. ref'd); *Jimenez v. State*, 750 S.W.2d 798, 803 (Tex.App.—El Paso 1988, pet. ref'd) (citing *Minor v. State*, 153 Tex. Crim. 242, 219 S.W.2d 467 (1949)).

The State concedes that the "pursuit" of Yeager did not involve Yeager's disregarding a police order to stop, but argues that there is no necessity for an "extended hue and cry, just a chase, however brief," citing *United States v. Santana*, 427 U.S. 38, 43, 96 S.Ct. 2406, 2410, 49 L.Ed.2d 300 (1976). As the United States Supreme Court recognized in *Santana*, though, " 'hot pursuit' means some sort of a chase." *Id.* Here, the officers testified that they were not seeking to stop Yeager until well after they left the limits of their jurisdiction.[7] Although the officers thought they

---

7. Unlike the situation in *Duenez*, where the police officer was actively searching specifi-

could stop him before, they made no attempt to do so and did not testify that they intended to do so before leaving the confines of their jurisdiction. Rather, they followed Yeager out of their jurisdiction for the purpose of observing him, not for the purpose of detaining him. The doctrine of hot pursuit does not apply because there was no "pursuit" initiated within the officers' jurisdiction.

### The Motion to Suppress Should Have Been Granted

 Evidence obtained by an officer or other person in violation of the law of the State of Texas, which also affects a defendant's rights, is inadmissible at trial. TEX. CODE CRIM. PROC. ANN. art. 38.23(a); *Chavez*, 9 S.W.3d at 819. Although acting in good faith, the officers impermissibly used the power of their office to detain and investigate Yeager outside of their jurisdiction in violation of Texas law. *Dominguez*, 924 S.W.2d at 956. Their action in detaining and further investigating Yeager infringed on Yeager's constitutionally and statutorily protected right to be left alone by the state and his statutorily protected right to be free, subject to narrowly tailored exceptions, from a warrantless arrest. *See Carmouche*, 10 S.W.3d at 328; *Fry v. State*, 639 S.W.2d 463, 465 (Tex. Crim.App. [Panel Op.] 1982); *State v. Parson*, 988 S.W.2d 264, 266 (Tex.App.—San Antonio 1998, no pet.). Thus, all of the evidence which the officers obtained as a result of the detention should have been suppressed.

The trial court erred in its application of the law of search and seizure when it denied Yeager's motion to suppress. That error affected Yeager's substantial rights.[8] TEX.R.APP. P. 44.2(b); *McCain v. State*, 995 S.W.2d 229, 235 (Tex.App.—Houston [14

Dist.] 1999, pet. ref'd, untimely filed). Therefore, we reverse its judgment and remand this cause with instructions to grant Yeager's motion to suppress in its entirety.

Dissenting Opinion by Justice GRAY.

GRAY, Justice, dissenting.

Pantego officers never lost sight of Yeager after they had a proper basis for detention in their jurisdiction. They pursued him for further observation. He crossed the boundary of Pantego. Upon observing additional dangerous driving, they detained Yeager and determined that he was intoxicated and arrested him for driving while intoxicated in Pantego. Even though the "pursuit" was not at a high rate of speed, or with flashing lights and sirens, the doctrine commonly known as "hot pursuit" by which law enforcement officers are allowed to make an arrest of a suspect in another jurisdiction for a crime occurring in their jurisdiction is appropriately applied to these facts. *See Duenez v. State*, 735 S.W.2d 563 (Tex.App.—Houston [1st Dist.] 1987, pet. ref'd). The conviction should be affirmed. Because the majority holds otherwise, I respectfully dissent.

---

cally for the defendant prior to leaving the officer's jurisdiction, with apparently every intention of detaining the defendant when he located him, and the primary delay in initiating the stop was the arrival of backup police units. *Duenez v. State*, 735 S.W.2d 563 (Tex. App.—Houston [1st Dist.] 1987, pet. ref'd).

**8.** We apply the non-constitutional error harm analysis because the source of the error is the trial court's application of Texas statutory and common law, not its application of constitutional principles.