Jeffery Dean GERRON, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–00–066–CR.

Court of Appeals of Texas,
Waco.

Aug. 31, 2001.

W. Lee Johnson, Ennis, for appellant.

Cynthia W. Hellstern, Ellis County Asst. District Attorney, Waxahachie, for appellee.

Before DAVIS, Chief Justice, VANCE and GRAY, Justices.

## OPINION

VANCE, Justice.

A jury found Jeffrey Dean Gerron guilty of misdemeanor driving while intoxicated ("DWI") and assessed his punishment at ninety days in jail and a $1,000 fine. The court placed Gerron on two years' probation. There were fact issues at trial about the events that led to the officer's stop and arrest of Gerron outside the officer's geographical jurisdiction and whether the officer therefore made an illegal stop. Because of these fact issues, Gerron was entitled to a jury charge instruction under article 38.23(a), which reads:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.
>
> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

TEX.CODE CRIM. PROC. ANN. § 38.23(a) (Vernon Supp.2001). Gerron requested an instruction under this article, but it was denied. Finding error in the denial that harmed Gerron, we will reverse and remand for a new trial.

## BACKGROUND AND PROCEDURAL HISTORY

At 2:30 in the morning, Officer Phillip Shelton of the City of Palmer Police Department heard some CB chatter about a vehicle on Interstate 45. Evidence of the substance of the chatter was excluded by the court. Shelton spotted the vehicle just inside the city limits of Palmer on Interstate 45 and began following it. The vehicle was driven by Gerron.

Shelton followed Gerron for over a mile outside the Palmer city limits to evaluate Gerron's operation of the vehicle. Shelton testified he observed the vehicle "weave" from lane to lane and cross onto the shoulder and back. Shelton vacillated on whether Gerron wove before they left the city limits of Palmer. Also, the weaving from lane to lane was described on cross-examination simply as Gerron changing lanes from time to time in a safe manner.

It was also windy that night which Shelton admitted may have contributed to Gerron's "weaving."

Well outside of Palmer, Gerron exited the highway, ran a stop sign, and stopped in the middle of an intersection. Shelton activated his lights, but Gerron turned and continued driving. After following the vehicle for about 200 yards, Shelton activated his siren. Gerron did not stop for another mile and a half. The entire sequence of events beginning in Palmer and ending with the stop took about five minutes.

At the vehicle, Shelton detected a strong odor of an alcoholic beverage on Gerron, and noticed he was swaying in his seat and had trouble opening the window. Gerron admitted he had consumed a couple of drinks. Shelton had Gerron get out of the vehicle so Shelton could administer field-sobriety tests; Gerron stumbled as he walked. Shelton administered three field-sobriety tests which he testified Gerron failed. Based on Gerron's driving, the results of the field tests, and the other indicators he observed at the scene of the stop, Shelton concluded that Gerron was intoxicated. Shelton arrested Gerron and took him to the Ellis County jail. Shelton read Gerron the required statutory warnings before requesting a breath test to determine blood-alcohol level. Gerron refused the test. No videotape was taken at the jail because no one could find a key to the room in which the video machine was located.

Gerron pled not guilty, and after a jury trial he was convicted. On appeal, he complains that: 1) the evidence is factually insufficient to support his conviction; 2) Shelton's testimony about the results of his administration of the horizontal-gaze-nystagmus test should not have been admitted; 3) the jury should have been instructed to make a finding about whether the stop of Gerron's vehicle was legal; and 4) Gerron's counsel was not allowed to make an opening statement at the close of the State's case.

## SHELTON'S GEOGRAPHIC JURISDICTION

Prior to the 1995 amendments to chapter 341 of the Local Government Code,[1] the geographic jurisdictional area of most municipal police officers was, by statute, county-wide. *Angel v. State*, 740 S.W.2d 727, 732–36 (Tex.Crim.App.1987); *Preston v. State*, 983 S.W.2d 24, 26 (Tex. App.—Tyler 1998, no pet.). However, in 1995 the operable statutory language was amended so that now those municipal police officers have the same geographic jurisdictional area as peace officers have under the Code of Criminal Procedure.[2] *Preston v. State*, 983 S.W.2d at 26. But the Code of Criminal Procedure does not define that area. *See, e.g.* Tex.Code Crim. Proc. Ann. arts. 2.13(a), 14.03(g) (Vernon Supp.2001). Nor are there any other statutes defining the geographic jurisdictional area for peace officers. However, that does not mean city police have unlimited geographic jurisdiction. *Angel*, 740 S.W.2d at 732. At common law, the geographic jurisdictional area of a municipal police officer was the city limits. *Landrum v. State*, 751 S.W.2d 530, 531 (Tex. App.—Dallas 1988, pet. ref'd); *Love v. State*, 687 S.W.2d 469, 471 (Tex.App.— Houston [1st Dist.] 1985, pet. ref'd). Applying the common law rule, Shelton's geo-

---

1. Chapter 341, Tex. Loc. Gov't Code Ann. ch. 341 (Vernon 1999), was enacted in 1987 and replaced various articles pertaining to municipal law enforcement, including Tex.Rev.Civ. Stat. Ann. arts. 998, 999 (Vernon 1963).

2. Municipal police officers are by statute "peace officers." Tex.Code Crim Proc. Ann. art 2.12(3) (Vernon Supp.2001); *Preston v. State*, 983 S.W.2d at 25.

graphic jurisdiction ended at the city limits of Palmer.

■ Generally, a "peace officer is a peace officer only while in his jurisdiction and when the officer leaves that jurisdiction, he cannot perform the functions of his office." *Thomas v. State,* 864 S.W.2d 193, 196 (Tex.App.—Texarkana, 1993 pet. ref'd). However, there are exceptions.

Municipal police can arrest a person outside their geographic jurisdictional area and without a warrant when the person commits any offense in the officer's presence or view, except a traffic violation. TEX.CODE CRIM. PROC. ANN. art. 14.03(d), (g) (Vernon Supp.2001). Shelton admitted he found probable cause for the DWI arrest only after completing the field-sobriety tests, which means he did not observe a DWI offense before then; he observed only events which might cause a reasonable suspicion of a DWI. The only possible offenses Shelton may have observed Gerron commit outside the Palmer city limits were traffic offenses, *i.e.,* failure to maintain a single lane and running a stop sign. TEX. TRANSP. CODE ANN. §§ 545.060, 544.010 (Vernon 1999). Under article 14.03(g), Shelton could not legally stop Gerron for these violations.

■ Another exception applies when the offense is committed inside the officer's geographic jurisdictional area, and there is a "hot pursuit" of the offender outside the area. A "hot pursuit" occurs when "officers [are] drawn outside of their jurisdiction while in 'hot pursuit' of a fleeing suspect." *Yeager v. State,* 23 S.W.3d 566, 575 (Tex.App.—Waco 2000, pet. filed). It applies "where there is no break in the police effort to apprehend or in the subject's effort to escape." *Id.* There must be "some sort of chase." *Id.* (citing *United States v. Santana,* 427 U.S. 38, 43, 96 S.Ct. 2406, 2410, 49 L.Ed.2d 300 (1976)). Shelton followed Gerron for over a mile at normal highway speeds before Gerron ran the stop sign, and Shelton made no attempt during this time to stop Gerron. Under this record it cannot reasonably be contended that Shelton was in "hot pursuit" of Gerron until after Shelton activated his lights at the stop sign, well after leaving the city limits of Palmer.

■ An officer may not stop or detain a person outside the officer's jurisdictional area when the officer has only a "reasonable suspicion" that an offense has occurred or is occurring. We held in *Yeager* that a municipal police officer does not have jurisdiction outside his city limits to conduct an investigatory detention. 23 S.W.3d at 572. We reasoned that by its plain language, article 14.03 of the Code of Criminal Procedure authorizes only arrests based on probable cause outside an officer's jurisdictional area. Therefore, Shelton could not legally stop Gerron to investigate a possible DWI, based on what he saw outside the city limits. However, we did recognize an exception, *i.e.,* (1) reasonable suspicion for the detention was developed within the city limits, and (2) the officer was in "hot pursuit" of the suspect. *Id.* at 575.

Shelton's testimony about whether Gerron "wove" inside the Palmer city limits was contradictory. His testimony about what he meant by "weaving" also raises a substantial question about whether he had a reasonable suspicion that Gerron was DWI. However, assuming *arguendo* that there was a reasonable suspicion that Gerron was DWI and that it first developed inside Palmer's city limits, once Gerron left the city limits, there must have been a "hot pursuit" for the subsequent stop to be legal as an investigatory stop. As we have already discussed, there was no "hot pursuit."

## SUMMARY

If Shelton had a reasonable suspicion inside the city limits of Palmer that Gerron was committing a DWI offense, which is debatable from this record, without a "hot pursuit" he lost jurisdiction to stop Gerron for an investigatory detention when they left the Palmer city limits. *Yeager*, 23 S.W.3d at 575. For a stop of Gerron outside Palmer for a traffic offense which occurred inside the Palmer city limits, a "hot pursuit" was also required, which did not occur. As for arresting Gerron for a traffic violation which occurred outside Palmer, under article 14.03(g) Shelton was without jurisdiction. Finally, Shelton did not observe the offense of DWI until he had already stopped Gerron. Any stop for a suspected but unobserved DWI offense was investigatory and therefore illegal. For all these reasons, there were fact issues about the legality of the stop, and Gerron was entitled to the jury instruction.[3]

## HARM ANALYSIS

■■■ A judgment will not be reversed based on a charge error unless the error is "calculated to injure the rights of [the] defendant." Tex.Code Crim. Proc. Ann. art. 36.19. The error must be "harmful." Failure to give an article 38.23(a) instruction is "harmful" if the defendant objected at trial and the record shows "some harm." *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim.App.1996); *Atkinson v. State*, 923 S.W.2d 21, 26–7 (Tex.Crim.App.1996); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1985) (op. on reh'g). The appellate court must examine the record as a whole to find if it can "say with confidence that the error did not cause some harm." *Ovalle v. State*, 13 S.W.3d

774, 787–788 (Tex.Crim.App.2000) (the defendant does not have the burden of proof; "actual harm" is not required).

■■■ Excluding Shelton's testimony about Gerron's condition after the stop, the State has no evidence that Gerron committed a DWI offense. Therefore, we find at least "some harm" from the fact that the jury was not given the opportunity to decide whether or not the evidence should have been excluded.

## OTHER ISSUES

Because we reverse on the jury-charge issue, we do not decide Gerron's other issues.

## CONCLUSION

Gerron's third issue is sustained. The judgment is reversed, and the cause is remanded for a new trial.

Justice GRAY, dissenting.

GRAY, Justice, dissenting.

Once again, the majority decides an appeal based on an issue not raised or briefed by the appellant or rebutted by the State. The issue Gerron presented:

The trial court erred in failing instruct the jury, as requested, concerning the appellant's alleged failure to maintain a single lane.

The issue decided by the majority:

Gerron was entitled to a jury instruction because any stop outside a police officer's jurisdiction for a suspected but unobserved DWI offense was investigatory and therefore illegal.

Appellant's counsel raised an issue about the officer's jurisdiction with the trial court

---

**3.** Gerron does not complain on appeal about the court's ruling in admitting Shelton's testi-

mony about events at the location of the stop.

in a motion for directed verdict. It was denied. Counsel specifically declined to question on appeal the correctness of the court's decision to deny the directed verdict. We should not do it for him.

Even if the issue decided by the majority was raised by Gerron, I believe Articles 14.01 and 14.03 of the Code of Criminal Procedure are broad enough to allow for reasonable suspicion to be developed while in the officer's geographical jurisdiction. TEX.CODE CRIM. PROC. arts 14.01 & 14.03(d) (Vernon 1977 & Supp. 2001); *see also Romo v. State*, 577 S.W.2d 251 (Tex.Crim. App.1979). This is especially true for DWI offenses. I did not, and still do not, agree with this Court's previous decision in *Yeager* and its discussions of a police officer's extra-jurisdictional authority. *Yeager v. State*, 23 S.W.3d 566 (Tex.App.— Waco 2000, no pet.). I do not now agree with the majority's application of *Yeager* in this case.

With these comments, I respectfully dissent.