The STATE of Texas, Appellant,

v.

Matthew Wayne KURTZ, Appellee.

No. 05–02–00421–CR.

Court of Appeals of Texas, Dallas.

July 17, 2003.

Lloyd D. Odle, Lewisville, for appellee.

Gary S. Abrams, Dallas, for appellant.

## OPINION

Opinion By Justice O'NEILL.

The State appeals an order granting appellee Matthew Wayne Kurtz's motion to suppress. *See* TEX.CODE CRIM. PROC. ANN. art. 44.01(a)(5) (Vernon Supp.2003). The issue presented is whether a Plano police officer had jurisdiction to stop Kurtz in the City of Frisco. Because we conclude the Plano officer had no such jurisdiction, we affirm the trial court's order.

Kurtz was charged by information with driving while intoxicated. Kurtz filed a motion to suppress evidence asserting he was illegally stopped. At a hearing on the motion, the State presented evidence that Kurtz was stopped by Plano police officer Steven Boyd for swerving onto the improved shoulder of State Highway 121. *See* TEX. TRANSP. CODE ANN. § 545.058 (Vernon 1999). Boyd testified Kurtz drove on the improved shoulder three times. Boyd turned his in-car camera on and continued to follow Kurtz for about twenty seconds.

During this period, Kurtz had "regained" his composure and remained in the right-hand lane. Boyd stopped Kurtz for committing the traffic offense and because he "suspected" Kurtz might be committing an intoxication offense. After stopping Kurtz, Boyd administered field sobriety tests and then arrested Kurtz for driving while intoxicated.

The defense sought suppression of evidence obtained as a result of the stop because Boyd, a Plano officer, did not have the authority to stop Kurtz for a traffic offense in the City of Frisco. Specifically, Kurtz showed Boyd stopped Kurtz on the portion of S.H. 121 that is within Frisco's city limits. The State responded the officer could make a traffic stop and could also stop Kurtz because the officer had "reasonable suspicion" Kurtz was intoxicated. The trial court took the motion under advisement.

The trial court subsequently granted the State's motion to reopen to allow the State to attempt to show that, even if the officer was outside his geographic jurisdiction, the Plano officer had authority to make the stop in the City of Frisco. The State relied on two agreements between Plano and Frisco—(1) a Boundary Adjustment Agreement and (2) an Interlocal Agreement. After reviewing the agreements, the trial court concluded they did not give the Plano officer the authority to stop Kurtz and granted Kurtz's motion to suppress. The State appeals.

In reviewing a trial court's decision on a motion to suppress, we review the evidence in the light most favorable to the trial court's ruling. *State v. Ballard,* 987 S.W.2d 889, 891 (Tex.Crim.App.1999). We afford the trial court almost total deference in its determination of historical fact when that determination is based on credibility or demeanor. *See Ripkowski v. State,* 61 S.W.3d 378, 381–82 (Tex.Crim.

App.2001), *cert. denied,* —— U.S. ——, 123 S.Ct. 2274, 156 L.Ed.2d 133 (2003). We also give deference to a trial court's determination of historical fact when credibility is not an issue. *See Manzi v. State,* 88 S.W.3d 240, 243–44 (Tex.Crim.App.2002). However, we review de novo whether the trial court properly applied the law to the facts. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997).

■ In its first issue, the State asserts the trial court erred in granting the motion because, pursuant to the two agreements between Plano and Frisco, Plano police had the authority to make the stop. The State asserts the Boundary Adjustment Agreement and the Interlocal Agreement together gave the City of Plano jurisdiction to provide law enforcement in the City of Frisco. Having reviewed the two documents, we cannot agree.

The Boundary Adjustment Agreement, if in effect, would actually alter the boundary between Plano and Frisco such that the portion of S.H. 121 where Kurtz was stopped would have been within Plano's city limits. The Interlocal Agreement, on the other hand, allowed the City of Plano to perform certain tasks in the same portion of S.H. 121, which the agreement indicated was within the City of Frisco, *i.e.* the same area the Boundary Adjustment agreement purportedly ceded to Plano. Thus, the agreements are not consistent and cannot be read to coexist. The State did not attempt to show which agreement controlled. For purposes of this appeal, we will review the documents independently to determine if either gave Plano police authority to make the stop.

■ We begin by noting the trial court found that Kurtz was stopped in the City of Frisco. The State does not challenge this finding and there is evidence to support it. Specifically, Kurtz presented evi-

dence that (1) the City Secretary of the City of Frisco certified that the boundary between Frisco and Plano was the center line of S.H. 121 and (2) Kurtz was stopped on the Frisco portion of S.H. 121. Moreover, one of the State's own witnesses testified the portion of S.H. 121 where Kurtz was stopped was "technically" in the City of Frisco. Finally, although the Boundary Adjustment Agreement appears to alter the city limit between Frisco and Plano, the agreement on its face showed that it would only be effective upon ratification and adoption by the governing bodies of each city. There was no evidence such ratification or adoption ever occurred. We conclude the Boundary Adjustment agreement did not give Plano police authority to make the stop.

■ We next determine whether the Interlocal Agreement gave Plano police authority to stop Kurtz. The agreement provided that Plano would have the following obligations:

(a) PLANO shall install, operate, and maintain all traffic signal equipment along the below-referenced portion of State Highway 121 in accordance with the Texas Uniform Traffic Control manual.

(b) PLANO shall at all times maintain traffic signal equipment in optimal working order.

(c) PLANO assumes responsibility for the control of the traffic along State Highway 121 between the east and west City limits of Plano and hereby agrees and binds itself to defend FRISCO from and against all suits, actions, or claims of any character, name and description brought for or on account of any injuries or damages (including, but not limited to, injuries resulting in death) received or sustained by any person, persons, or property on account of or arising out of, or in connection with, installation, opera-

tion, and maintenance of the traffic signal equipment along the above referenced portion of State Highway 121. Acts, omissions, misconduct, or fault of PLANO's contractors, subcontractors, and their officers, agents, and employees shall be considered for the purposes of this provisions [sic] as those of PLANO.

(d) PLANO shall provide the power source for the operation of the traffic signal equipment.

In consideration for Plano's obligations, the only authority Frisco gave Plano was "to operate traffic signal equipment" along the relevant portion of S.H. 121. After carefully reviewing the agreement, we conclude it did not give Plano police the authority to stop Kurtz. The agreement does not purport to give Plano any law enforcement authority in the City of Frisco. Rather, all the provisions concern traffic signal equipment. The State nevertheless asserts the agreement gave Plano law enforcement authority because a portion of provision (c) required Plano to assume "responsibility for the control of the traffic" on the relevant portion of S.H. 121. However, this provision, like all the others, is in reference to traffic signal equipment. Indeed, the purpose of that specific provision was to require Plano to indemnify Frisco for injuries sustained in connection with the installation, operation, and maintenance of "traffic signal equipment."

There are other indications the agreement relates only to traffic signal agreement. For example, the agreement required Plano to make available to Frisco any of its records, reports, or other documents "relating to traffic accidents or traffic conditions *at the intersections provided for in this agreement*" (which, of course, would be limited to where traffic control devises would be located). Finally, the agreement states that it shall not affect the validity of "other agreements between

PLANO and FRISCO including agreements pertaining to law enforcement."[2] Thus, read in its entirety, the agreement is limited to Plano's duties with respect to and authority over traffic control equipment. The agreement did not concern and did not authorize Plano to provide law enforcement.

 The State next asserts the trial court erred in concluding Boyd's jurisdiction was limited to Plano's city limits because the Plano officer's jurisdiction "could be ... construed to be countywide." If a police officer's geographic jurisdiction is not found in some statute, it is controlled by the common law. *Angel v. State,* 740 S.W.2d 727, 732 (Tex.Crim.App.1987). At common law, a police officer's jurisdiction was confined to the limits of his city. *See Landrum v. State,* 751 S.W.2d 530, 531 (Tex.App.-Dallas 1988), *pet. ref'd per curiam,* 795 S.W.2d 205 (Tex.Crim.App. 1990). Thus, unless there exists some statutory authority for extension of that jurisdiction, the Plano officer's jurisdiction was limited to Plano's city limits. *See Angel,* 740 S.W.2d at 732.

In its brief, the State concedes there is no Texas statute that delineates an officer's geographic jurisdiction. Nor has our research revealed any such statute. The code of criminal procedure does, however, clearly contemplate that a police officer's jurisdiction is geographically limited. Specifically, article 14.03(g) provides:

A peace officer ... who ... is outside the officer's jurisdiction may arrest without a warrant a person who commits any offense within the officer's presence or view, except that an officer who is outside the officer's jurisdiction may arrest a person for a violation of Subtitle C, Title 7, Transportation Code, only if

the officer is listed in Subdivision (4), Article 2.12 ...

TEX.CODE CRIM. PROC. ANN art. 14.03(g) (Vernon Supp.2003).

In this case, Kurtz was stopped for driving on an improved shoulder, a violation of Subtitle C, Title 7 of the transportation code. *See* TEX. TRANSP. CODE ANN. § 545.058 (Vernon 1999). Officer Boyd, a city police officer, is not an officer listed in subdivision (4), article 2.12. See TEX.CODE CRIM. PROC. ANN. art. 2.12(4) (Vernon Supp. 2003). Therefore, the stop was only lawful if Boyd was within his jurisdiction. Because no statute specifies the confines of Boyd's jurisdiction, it was limited to the City of Plano. *See Angel,* 740 S.W.2d at 732 (in the absence of a statute, an officer's geographic jurisdiction is controlled by common law); *Landrum,* 751 S.W.2d at 531(at common law an officer's jurisdiction is city-wide). Thus, Boyd did not have the authority to make the traffic stop in the City of Frisco. *See Armendariz v. State,* 63 S.W.3d 572, 576 (Tex.App.-El Paso 2001, pet. granted).

 In reaching this conclusion, we reject the State's reliance on *Angel* for the proposition that a police officer's jurisdiction is countywide. In *Angel,* the court of criminal appeals, relying on former revised civil statutes articles 998 and 999, held that a city police officer's jurisdiction is countywide. *See Angel,* 740 S.W.2d at 733–36. Articles 998 and 999 were later replaced by chapter 341.001 and 341.021 of the local government code, which likewise included provisions which the courts construed gave city police officers countywide jurisdiction. *See* Act of May 1, 1987, 70th Leg., R.S., ch. 149, § 1, 1987 Tex. Gen. Laws 707, 1136–1138 (amended 1995) (current version at

---

**2.** The State did not present evidence of any such agreements between Plano and Frisco concerning law enforcement. We make no determination whether such an agreement, if in effect, would have authorized the stop.

TEX. LOCAL GOV'T CODE ANN. §§ 341.001, 341.021 (Vernon 1999)); *Landrum,* 751 S.W.2d at 531. However, chapter 341.001 applied only to Type A General–Law Municipalities. *See* Act of May 1, 1987, 70th Leg., R.S., ch. 149, § 1, 1987 Tex. Gen. Laws 707, 1136–1138 (amended 1995) (current version at TEX. LOCAL GOV'T CODE ANN. § 341.001 (Vernon 1999)). The City of Plano is a home-rule municipality. Regardless, in 1995, the legislature repealed the statutory language upon which the case law was based. *See* Act of May 28, 1995, 74th Leg., R.S., ch. 829, §§ 2, 3, 1995 Tex. Gen. Laws 4213, 4213–14. We agree with the Waco court that prior case law relying on the repealed statutory language cannot justify a conclusion that a municipal police officer's jurisdiction is countywide. *See Gerron v. State,* 57 S.W.3d 568, 570 (Tex.App.-Waco 2001), *rev'd on other grounds,* 97 S.W.3d 597 (Tex.Crim.App. 2003); *Yeager v. State,* 23 S.W.3d 566, 570 (Tex.App.-Waco 2000), *rev'd on other grounds,* 104 S.W.3d 103 (Tex.Crim.App. 2003).

▇ We recognize the Fort Worth court has disagreed with the Waco court, holding a city police officer's jurisdiction remains "at least" countywide. *See Brother v. State,* 85 S.W.3d 377, 385 (Tex.App.-Fort Worth 2002, pet. filed). Similarly, the Houston First Court of Appeals has held that a city police officer's jurisdiction remains countywide. *Dogay v. State,* 101 S.W.3d 614, 617 (Tex.App.-Houston [1st Dist.] 2003, no pet.). The Fort Worth and Houston First courts relied on the legislative history of article 14.03, which was enacted at the same time the legislature repealed the language in the local government code that allowed for countywide jurisdiction. According to these courts, the legislative history of article 14.03 showed that the legislature's overall intent was to increase the geographic jurisdiction of city

officers to make arrests to the entire State of Texas. *See Dogay,* 101 S.W.3d at 617; *Brother,* 85 S.W.3d at 384. Interestingly, article 14.03(g) itself expressly limits its expansion of jurisdiction to arrest for offenses *other than traffic offenses.* Thus, while the legislature plainly intended to expand an officer's jurisdiction to arrest for offenses other than traffic offenses, the same cannot be said of its intent with respect to traffic offenses. Our sister courts nevertheless ignored that the legislature repealed the language that allowed for countywide jurisdiction. They did so by assuming the legislature could not have intended to reduce police officers' jurisdiction to arrest for traffic offenses while increasing their jurisdiction to arrest for other offenses. In light of the legislature's clear decision to treat traffic offenses differently from other offenses, we cannot agree with this assumption. Moreover, in reaching its conclusion, our sister courts ignored the well-established principle that the legislature is aware of court decisions construing Texas statutes and was thus aware it repealed the very language that provided for countywide jurisdiction. *See Grunsfeld v. State,* 843 S.W.2d 521, 523 (Tex.Crim.App.1992) (when examining amendment to existing statutes, we presume legislature is aware of case law relating to statute). We resolve the first issue against the State.

▇ In the second issue, the State asserts the trial court erred in granting the motion to suppress because Officer Boyd was permitted to detain Kurtz for a breach of the peace, specifically driving while intoxicated. It relies on article 14.03(d) of the code of criminal procedure, which governs the authority of peace officers to arrest. *See* TEX.CODE CRIM. PROC. ANN. art. 14.03(d) (Vernon Supp.2003). The State does not assert that prior to the stop, Boyd had probable cause to believe

Kurtz was driving while intoxicated. Instead, the State maintains Boyd had "reasonable suspicion" to believe Kurtz was committing the offense. However, an arrest under article 14.03 must be upon probable cause. *See Gerron,* 57 S.W.3d at 571; *Yeager,* 23 S.W.3d at 572; *Cf. Garner v. State,* 779 S.W.2d 498, 501 (Tex.App.-Fort Worth 1989), *pet. ref'd per curiam,* 785 S.W.2d 158 (Tex.Crim.App.1990) (police officer acting as private citizen can arrest under article 14.01 only upon probable cause). Article 14.03 does not authorize officers to investigate possible breaches of the peace outside their jurisdiction only on reasonable suspicion. *See Gerron,* 57 S.W.3d at 571; *Yeager,* 23 S.W.3d at 572; *see also Garner,* 779 S.W.2d at 501; *Thomas v. State,* 864 S.W.2d 193, 196 (Tex. App.-Texarkana 1993, pet. ref'd) (police officer is permitted to perform functions of police officer only while in his jurisdiction); *see also Yeager v. State,* 104 S.W.3d 103, 107 (Tex.Crim.App.2003). Therefore, the argument presented in the State's second point of error is without merit.

The dissent, however, would sustain this issue by concluding a police officer is permitted to make an investigatory stop outside his jurisdiction on reasonable suspicion. According to the dissent, the authority to arrest necessarily includes the authority to investigate. We disagree. Initially, we note the dissent's conclusion conflicts with the court of criminal appeals's opinion in *Yeager v. State.* Specifically, in *Yeager,* two Pantego Village city police officers, while within their city limits, observed the defendant nearly drive into a ditch while leaving the parking lot of a bar. *Yeager,* 104 S.W.3d at 104. The officers suspected the defendant was intoxicated and followed him to evaluate his driving. The officers followed the defendant outside the city limits of Pantego Village. When the defendant nearly hit another vehicle, the officers stopped him.

The officers then conducted field sobriety tests, and arrested the defendant for DWI. The defendant moved to suppress the evidence obtained during his arrest asserting the officers did not have the authority to detain him outside their geographic jurisdiction. The court of criminal appeals concluded the stop was lawful under the "hot pursuit" doctrine. The court reasoned:

> Under the "hot pursuit" doctrine, the relevant consideration ... is whether the initial "pursuit" was "lawfully initiated on the ground of suspicion." Here, the police "pursuit" of appellant was "lawfully initiated on the ground of suspicion" *because it began within the officers' geographic boundary* and was based at least on reasonable suspicion that appellant was driving while intoxicated. We, therefore, hold that ... appellant's initial detention was lawful under the "hot pursuit" doctrine.

*Yeager,* 104 S.W.3d at 107 (emphasis added) (citations omitted). Thus, the court of criminal appeals clearly indicated a police officer's authority to make investigatory detentions is limited to reasonable suspicion arising in the geographic boundaries of their jurisdiction.

Furthermore, we disagree with the dissent's assumption that an officer must be able to investigate crimes while outside his jurisdiction because such an officer can arrest if he observes a crime being committed. Under this rationale, private citizens would also be permitted to investigate crimes because they too have the authority to arrest for crimes committed in their presence. *See* Tex.Code Crim. Proc. Ann. art. 14.01(a) (Vernon 1977). However, we agree with the Fort Worth Court of Appeals that a private citizen does not have the authority to make an investigatory detention. *See Garner,* 779 S.W.2d at 501. We conclude an officer

outside his jurisdiction does not have the authority to conduct an investigatory detention outside his geographic jurisdiction.

 The dissent also suggests the stop was lawful because Boyd had probable cause to stop Kurtz for a breach of the peace other than driving while intoxicated. According to the dissent, the manner of Kurtz's driving, in and of itself, was a breach of the peace. However, the State did not present this theory to the trial court. Therefore, we cannot reverse the trial court on this basis. *State v. Mercado,* 972 S.W.2d 75, 77 (Tex.Crim.App.1998) (per curiam); *State v. Boado,* 55 S.W.3d 621, 623 (Tex.Crim.App.2001). Furthermore, our review of the State's brief shows the State is not raising this issue on appeal. The Texas Court of Criminal appeals has held that an appellate court has discretion to consider unassigned error. *See Rezac v. State,* 782 S.W.2d 869, 870 (Tex.Crim.App.1990). However, we have found no case in which the Court has applied this holding to a State's appeal. Indeed, reversing a judgment in a State's appeal on an issue in which a defendant has not been given an opportunity to respond raises due process concerns. We resolve the second issue against the State.

We affirm the trial court's order granting the motion to suppress.

Dissenting Opinion By Justice
FITZGERALD.

FITZGERALD, Justice, dissenting.

I respectfully dissent. In its first issue, the State argues the Plano officer actually stopped Kurtz within the boundaries of the officer's geographic jurisdiction. I agree with the majority that the intra city agreements, as they were offered at trial, did not establish the officer's jurisdiction included the City of Frisco. However, I agree with our sister courts in Houston and Fort Worth that the Plano officer's jurisdiction by law was county-wide. *See Dogay v. State,* 101 S.W.3d 614, 617 (Tex. App.-Houston [1st Dist.] 2003, no pet.); *Brother v. State,* 85 S.W.3d 377, 385 (Tex. App.-Fort Worth 2002, pet. filed). The majority's argument against county-wide jurisdiction stresses the 1995 repeal of certain statutory provisions related to Type A general law municipalities. However, no action by the 1995 Legislature addressed the geographical jurisdiction of an officer in a home-rule municipality (like Plano) in any manner. Indeed, the legislative history of the 1995 amendments, discussed in both *Dogay* and *Brother,* supports the conclusion that the Legislature intended only to broaden the authority of police officers throughout the State, not to limit it. Accordingly, I would conclude that a municipal police officer retains the county-wide jurisdiction he presumptively held before 1995, and that this officer had the authority to stop Kurtz for the traffic violation.

I would also conclude that the officer appropriately stopped Kurtz for an intoxication offense. Kurtz's prolonged and dangerous driving pattern certainly sufficed to give the officer reasonable suspicion to detain him for driving while intoxicated. *See, e.g., Townsend v. State,* 813 S.W.2d 181, 185 (Tex.App.-Houston [14th Dist.] 1991, pet. ref'd). However, the majority opines that an out-of-jurisdiction officer must have probable cause rather than mere reasonable suspicion to stop and detain for the offense of driving while intoxicated; I disagree. The authority to arrest necessarily includes within it the authority to perform appropriate acts necessary for an arrest. The authority to stop and conduct an investigative detention based on reasonable suspicion is within the authority of a police officer and is part of the same process as an arrest. *See Johnson v. State,* 912 S.W.2d 227, 235 (Tex.Crim.App. 1995) (differences between arrests and in-

vestigative detentions are merely degree of intrusion involved and different legal justifications required of each). This is a judicial doctrine, not a legislative one, grafted onto the right to arrest through federal and state case law. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Crockett v. State,* 803 S.W.2d 308 (Tex.Crim.App.1991).

The majority disposes of the State's second issue concerning the driving-while-intoxicated detention in a single sentence: "Article 14.03 does not authorize officers to investigate possible breaches of the peace outside their jurisdiction only on reasonable suspicion." Op. at 322 (citing *Gerron v. State,* 57 S.W.3d 568, 571 (Tex.App.-Waco 2001), *rev'd on other grounds,* 97 S.W.3d 597 (Tex.Crim.App.2003); *Yeager v. State,* 23 S.W.3d 566, 572 (Tex.App.-Waco 2000), *rev'd on other grounds,* 104 S.W.3d 103 (Tex.Crim.App.2003); *Garner v. State,* 779 S.W.2d 498, 501 (Tex.App.-Fort Worth 1989), *pet. ref'd per curiam,* 785 S.W.2d 158 (Tex.Crim.App.1990); *Thomas v. State,* 864 S.W.2d 193, 196 (Tex. App.-Texarkana 1993, pet. ref'd)). But the code of criminal procedure does not generally address the authority to detain when it identifies grounds for arrest. Indeed, article 14.03(g) does not address probable cause either, and yet there is consensus that probable cause is the appropriate standard for an arrest under the article. *See, e.g., Yeager,* 23 S.W.3d at 572; Op. at 323.

The purpose of article 14.03(g) is clear on its face: to expand the range of criminal conduct from which an out-of-jurisdiction officer can protect the community. In the absence of any provision to the contrary, I would conclude the Legislature intended the out-of-jurisdiction officer to follow the same well-settled constitutionally based procedures he would follow for any other arrest, including probable cause to arrest and reasonable suspicion to detain.

Finally, the Legislature has specifically authorized an out-of-jurisdiction peace officer to make a warrantless arrest for a breach of the peace committed in his presence. While I believe that Kurtz's prolonged pattern of dangerous driving, in and of itself, constituted a breach of the peace for which the officer had authority to stop and arrest him under article 14.03(d), this Court need not rest its decision on that ground. It is sufficient to record my opinion that this issue was properly before the trial court and is before this Court on appeal, and to stress my opinion that an offense can qualify as a breach of the peace, so long as the conduct is sufficiently threatening by its nature, even if no identifiable individual is directly threatened.

For all of these reasons, I would reverse the order of the trial court and remand this cause.