Michael John YEAGER, Appellant,

v.

The STATE of Texas.

No. 1555–00.

Court of Criminal Appeals of Texas, En Banc.

April 2, 2003.

Davis McCown, Hurst, for Appellant.

John A. Stride, Asst. DA, Fort Worth, Matthew Paul, State's Atty., Austin, for State.

## OPINION

HERVEY, J., delivered the opinion of the Court in which KELLER, P.J., KEASLER, HOLCOMB, and COCHRAN, JJ., joined.

This DWI case differs from the ordinary because the arresting officers were outside their geographic boundary when they detained and subsequently arrested appellant. The evidence shows that two Pantego Village police officers suspected that appellant was driving while intoxicated when they observed appellant nearly drive his car into a ditch while leaving the parking lot of a bar within the Pantego Village city limits. *Yeager v. State*, 23 S.W.3d 566, 568–69 (Tex.App.-Waco 2000). It was approximately 10:00 p.m. on a Friday night. *Id.* Though they believed that they could lawfully stop appellant to investigate whether he was intoxicated, these officers decided to "follow" appellant so that one of them could observe appellant and "evaluate his driving." *Id.*

The officers followed appellant beyond the Pantego Village city limits and into the City of Arlington. *Id.* The officers soon observed appellant almost hit another vehicle. *Id.* The officers stopped appellant because they believed that he was dangerous to other drivers. *Id.* Appellant appeared intoxicated. *Id.* Appellant failed field sobriety tests and the officers arrested him for driving while intoxicated. *Id.* The officers took appellant to the City of Arlington Police Department for an intoxilyzer test and videotaping "because the City of Arlington had the necessary equipment." *Id.* After this, the officers took appellant to the Pantego Village Police station for processing. *Id.*

Appellant filed a motion to suppress all "evidence obtained as a result of the illegal conduct of the arresting officers." Appellant made no claim that the arresting officers lacked reasonable suspicion for his initial detention or probable cause for his subsequent arrest or that they violated any of appellant's other personal rights. Rather, appellant claimed that the arresting officers acted illegally by initially detaining him outside their geographic boundary and that any evidence they obtained as a result should have been suppressed under Article 38.23(a), Texas Code of Criminal Procedure, which, in relevant part, provides that any evidence "obtained in violation of the law" should be suppressed.[1] The parties stipulated at the

---

1. Appellant stated during the suppression hearing that he was not "contesting the stop or the arrest" but that he was contesting the officers' "legal authority to do anything."

   [THE COURT]: Hold on. Are you contesting the stop or the arrest?

   [APPELLANT]: Just all, Your Honor. We are saying he didn't have any legal authority to do anything; stop him, conduct field sobriety tests, or to arrest him. Our argument, Your Honor, is once he was in the City of Arlington, the Pantego Police Department didn't have any police authority whatsoever to do any of these things.

   [THE COURT]: So you have no quarrel with the—the investigation that was con-

ducted by the officer, just the fact that he no [sic] authority to conduct the investigation?

   [APPELLANT]: Yes, Your Honor. I'm not saying he—that he did anything illegal in the way he conducted the field sobriety test or anything, no. We are just saying that as a City of Pantego police officer—

   It also is not exactly clear what evidence appellant wanted suppressed or what evidence the Court of Appeals decided should have been suppressed. For example, at one point during the suppression hearing, appellant appeared to claim that the evidence obtained after the initial stop should have been

suppression hearing that Pantego Village is a Type "B" municipality. *See Yeager,* 23 S.W.3d at 569.[2] The trial court denied appellant's motion to suppress without making findings of fact or stating its reasons for doing so.

Appellant made the same claim on direct appeal that he made in the trial court. The Court of Appeals held that the trial court should have granted appellant's motion to suppress. *See Yeager,* 23 S.W.3d at 576. The Court of Appeals decided that a Type "B" municipality police officer's "authority ends at the city limits" unless extended by statute or by common law. *See Yeager,* 23 S.W.3d at 570–71.[3] The Court of Appeals also decided that, once outside their geographic boundary, the officers were statutorily authorized only to arrest appellant based on probable cause for an offense committed in their presence and

not statutorily authorized to "conduct an investigative detention" of appellant based on reasonable suspicion, as the officers initially did in this case. *See Yeager,* 23 S.W.3d at 570–75.[4]

The Court of Appeals then decided that this "investigative detention" of appellant could not be justified under the common law "hot pursuit" doctrine because the evidence showed that the officers "followed" appellant "out of their jurisdiction for the purpose of observing him, not for the purpose of detaining him," so, according to the Court of Appeals, there was no "chase" or "pursuit" initiated within the officers' geographic boundary. *See Yeager,* 23 S.W.3d at 575–76. We exercised our discretionary authority to review the decision of the Court of Appeals on whether the "hot pursuit" doctrine applies to this case.[5]

suppressed. This, however, would not include the officers' extra-geographic observations of appellant almost hitting another car before they stopped appellant. Appellant, however, later claimed during the suppression hearing that "essentially everything relating to this matter that the police officers did in the City of Arlington was illegal in that they did not have authority to act outside of their city limits." This would include the officers' extra-geographic observations of appellant almost hitting another car. The Court of Appeals decided that only the evidence that the officers obtained after the initial stop should have been suppressed. *See Yeager,* 23 S.W.3d at 576 ("all of the evidence which the officers obtained as a result of the detention should have been suppressed"). This does not include the officers' extra-geographic observations of appellant almost hitting another car.

2. This stipulation apparently pretermits application of this Court's plurality decision in *Angel v. State* which the Court of Appeals read as holding that city police officers of only Type "A" municipalities have county-wide jurisdiction. *See Angel v. State,* 740 S.W.2d 727, 736 (Tex.Cr.App.1987) (plurality op.); *Yeager,* 23 S.W.3d at 570–71 n. 3. We did not grant discretionary review on whether *Angel* applies to this case, and we also note that the continued viability of *Angel* is squarely pre-

sented in *Armendariz v. State,* 02–0070, which is currently pending in this Court.

3. We did not exercise our discretionary review authority to review this portion of the decision of the Court of Appeals.

4. As we understand it, the Court of Appeals decided that the trial court should have granted appellant's motion to suppress because the arresting officers had reasonable suspicion (not probable cause) only to believe that appellant was driving while intoxicated when they initially detained appellant for investigation of driving while intoxicated. *See Yeager,* 23 S.W.3d at 572 (issue was whether arresting officers had statutory authority to "detain [appellant] outside of their jurisdiction in the absence of probable cause to arrest him") and at 575 (arresting officers had no "statutory authority to conduct an investigative detention outside the limits of Pantego Village"). We did not exercise our discretionary review authority to review this portion of the decision of the Court of Appeals.

5. The State's sole ground for review asserts:

Must law enforcement officers intend to detain an intoxicated driver within their jurisdiction in order to later detain him

■ We initially note that the Court of Appeals erroneously decided that the police did not initiate a "chase" or a "pursuit" when they began to "follow" appellant. *Webster's II New Collegiate Dictionary* defines "pursue" to mean, among other things, "follow" or "chase." *Webster's II New College Dictionary* 900 (1999). The *Roget's Desk Thesaurus* also states that "follow" is synonymous with, among other things, "pursue" or "chase." *Roget's Desk Thesaurus* 206 (2001). Even if "chase" and "pursuit" are defined not to include "follow," the "hot pursuit" doctrine does not necessarily (though it will usually) involve "some element of a chase." *See United States v. Santana*, 427 U.S. 38, 96 S.Ct. 2406, 2409–10 n. 3, 49 L.Ed.2d 300 (1976) (some element of a chase will **usually** be involved in a "hot pursuit" case) (emphasis supplied). In any event, it does not end the analysis to conclude that the police initiated a "pursuit" or a "chase" when they began to "follow" appellant or that the "hot pursuit" doctrine does not necessarily involve "some element of a chase."

The leading Texas case from this Court on the "hot pursuit" doctrine is *Minor v. State*, 153 Tex.Crim. 242, 219 S.W.2d 467 (1949). There, two police officers became suspicious when they saw a car parked near a closed café at 3:00 a.m. *Minor*, 219 S.W.2d at 468–69. When the police turned on their lights, the defendant came out of the café and got into the parked car which sped off at an illegally excessive rate of speed. *Id.* The police "followed" the car and eventually arrested the defendant and a companion about a mile outside the city limits. *Id.* The car contained property taken from the café in a "burglarious entry." *Id.*

The defendant claimed that this evidence should have been suppressed under outside their jurisdiction under the "hot

the statutory predecessor to Article 38.23(a) because the police had no authority to arrest him outside the city limits. *Id.* This Court disagreed and held, in relevant part, that:

> . . . where a police officer has the right to arrest without warrant for an offense committed within the confines of his city and initiates a pursuit of the malefactor, being in immediate pursuit, he can continue such pursuit, although such continuance leads him outside the corporate limits of the city, if necessary . . .

*Minor*, 219 S.W.2d at 470.

We do not read this, however, as holding that the "hot pursuit" doctrine applies only "where a police officer has the right to arrest" just because *Minor* involved a situation where the police, in fact, had "the right to arrest" when they began to "follow" the defendant. *See Minor*, 219 S.W.2d at 469 (police had "the right to arrest" defendant for speeding when the police began to "follow" him). The *Minor* court could have reached the same result even if the police had only the "right to conduct an investigative detention" when they began to "follow" the defendant. The following language from *Minor* supports this:

> It should be remembered that after the flight began, [the defendant] and his companion were never out of the sight of the pursuing officers; **that their arrest without warrant was lawfully initiated on the ground of suspicion;** that upon their precipitate flight an additional right arose to arrest without warrant on account of their excessive speed which continued until it resulted in their apprehension and the finding of this recently stolen property outside the city limits. Or, in other words, when in legal and immediate pursuit of one suspected pursuit" doctrine?

of and actually in violation of the law, shall a policeman in pursuit of such evildoer, stop in such immediate pursuit and allow the suspected one to pass over the line and defy such peace officers to take him into custody, and in the event of such malefactor being reduced to arrest, was such detention illegal and any evidence obtained therefrom illegally obtained and violative of the [statutory predecessor to Article 38.23(a) ]?

*Minor*, 219 S.W.2d at 469 (emphasis supplied).

■ Under the "hot pursuit" doctrine, the relevant consideration in this case is whether the initial "pursuit" was "lawfully initiated on the ground of suspicion." *See id.; see and compare Santana*, 96 S.Ct. at 2410 ("a suspect may not defeat an arrest which has been [lawfully] set in motion in a public place ... by the expedient of escaping to a private place"). Here, the police "pursuit" of appellant was "lawfully initiated on the ground of suspicion" because it began within the officers' geographic boundary and it was based at least on reasonable suspicion that appellant was driving while intoxicated. We, therefore, hold that, assuming appellant has standing to challenge the officers' authority to detain him outside their geographic boundary,[6] appellant's initial detention was lawful under the "hot pursuit" doctrine.[7]

Finally, the officers' timing of the investigative detention outside their geographic boundary is irrelevant under the "hot pursuit" doctrine. *Cf. Santana*, 96 S.Ct. at 2412 (Marshall, J., dissenting) (police decision that the time is right to arrest a suspect should properly be given great deference). The relevant consideration is that the officers' conduct ultimately resulting in appellant's initial detention and subsequent arrest was "lawfully initiated on the ground of suspicion." *See Minor*, 219 S.W.2d at 469.

The dissenting opinion claims that several federal constitutional Supreme Court decisions, all involving warrantless police entries into a home or private living quarters,[8] support holding that the "hot pursuit" doctrine only "involves a chase and pursuit of, *and flight by*, the suspect; i.e., an immediate continuous pursuit of and some effort by the suspect to escape." *See Yeager*, 104 S.W.3d at 110–111 (Johnson, J., dissenting) (emphasis in original). Therefore, according to the dissent, the "hot pursuit" doctrine does not apply here since the police did not "chase" appellant and appellant did not attempt to "escape."

Initially we note that these Supreme Court federal constitutional decisions are not necessarily controlling since appellant has not claimed, and the evidence does not show, that a violation of any of appellant's federal constitutional rights occurred.

---

6. *See generally Chavez v. State*, 9 S.W.3d 817, 819 (Tex.Cr.App.2000) (defendant lacked standing to complain that police acted outside their geographical boundary).

7. This holding is also consistent with the policy advanced by the "hot pursuit" doctrine of protecting the lives of others. *See Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 1646, 18 L.Ed.2d 782 (1967) (Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others). *Santana* characterized *Warden* as in-

volving a true "hot pursuit" even though *Warden* never used the term "hot pursuit" and based its decision upon the "exigencies of the situation." *See Santana*, 96 S.Ct. at 2409–10 n. 3.

8. *See Welsh v. Wisconsin*, 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984); *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981); *Vale v. Louisiana*, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970); *Johnson v. United States*, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

These Supreme Court federal constitutional decisions are also factually distinguishable and they do not support holding that the "hot pursuit" doctrine only "involves a chase and pursuit of, *and flight by*, the suspect; i.e., an immediate continuous pursuit of and some effort by the suspect to escape."

The narrow question presented in *Steagald* was whether the police could make a warrantless search of the defendant's home while the police were there executing an arrest warrant for another person who did not live at the home and who was not there when the police executed the arrest warrant. *See Steagald*, 101 S.Ct. at 1644–47 (presenting the narrow question of whether this set of circumstances constituted an exception to the general rule that warrantless police entry into a home to conduct a search or to make an arrest is unreasonable). The Supreme Court addressed the applicability of an old common law rule that the police "could forcibly enter the home of a third party to execute an arrest warrant . . . only when the person to be arrested was pursued to the house." *See Steagald*, 101 S.Ct. at 1650.[9] The Supreme Court concluded that this common law rule was inapplicable because, among other things, this rule applied to the subject of the arrest warrant (not, as in *Steagald*, the subject of the search) and involved whether the subject of the arrest warrant "could claim sanctuary from arrest by hiding in the home of a third party." *See Steagald*, 101 S.Ct. at 1651. The Supreme Court did not decide that the "hot pursuit" doctrine applies only when there is a "chase" and "escape."

In *Vale*, the Supreme Court decided that it was illegal for the police to make a warrantless search of the defendant's home immediately after the police validly arrested the defendant on the front steps of his home pursuant to a warrant. *See Vale*, 90 S.Ct. at 1972. The Supreme Court decided that no exigent circumstances justified the warrantless search in part because the police "were not in hot pursuit of a fleeing felon." *See id.* The Supreme Court did not decide that the "hot pursuit" doctrine applies only when there is a pursuit of a fleeing or escaping felon.

In *Johnson*, the Supreme Court decided that it was illegal for the police to make a warrantless arrest of appellant in, and a warrantless search of, her hotel room. *See Johnson*, 68 S.Ct. at 370. The Supreme Court stated that it could find "no element of 'hot pursuit' in the arrest of one who was not in flight, was completely surrounded by agents before she knew of their presence, who claims without denial that she was in bed at the time, and who made no attempt to escape." *See Johnson*, 68 S.Ct. at 370 n. 7. The Supreme Court did not decide that the "hot pursuit" doctrine applies only when there is a "chase" and "escape."

Finally, the Supreme Court's decision in *Welsh* supports our decision in this case. In *Welsh*, the intoxicated defendant abandoned his car in an open field in the middle of the night and fled to his home a short distance away. *See Welsh*, 104 S.Ct. at 2093–94. A few minutes later, the police arrived at the location of the defendant's abandoned car, they developed probable cause to believe that the defendant had

---

**9.** The Supreme Court also stated that the significance accorded to such common law authority must be kept in perspective because its Fourth Amendment decisions have not "simply frozen into constitutional law those enforcement practices that existed at the time of the Fourth Amendment's passage." *See Steagald*, 101 S.Ct. at 1650 n. 10 (internal quotes omitted).

been driving while intoxicated, and they determined where the defendant lived. *See id.* Not long after this, the police without a warrant entered the defendant's home and arrested the naked defendant in his bedroom for DWI which, under state law, was a nonjailable offense. *See Welsh*, 104 S.Ct. at 2094–96.

The Supreme Court held that the Fourth Amendment "prohibits the police from making a warrantless night entry of a person's home in order to arrest him for a nonjailable traffic offense." *See Welsh*, 104 S.Ct. at 2093, 2099. The Supreme Court also decided that the government's claim of "hot pursuit [was] unconvincing because there was no immediate or continuous pursuit of the [defendant] from the scene of a crime." *See Welsh*, 104 S.Ct. at 2099. In this case, we have decided that there was an immediate and continuous pursuit of appellant from the scene of a crime when the police began and continued to follow the intoxicated appellant.

The judgment of the Court of Appeals is reversed and the judgment of the trial court is affirmed.

WOMACK, J., concurred.

MEYERS, J., filed a dissenting opinion joined by PRICE, J.

JOHNSON, J., filed a dissenting opinion joined by PRICE, J.

MEYERS, J., filed a dissenting opinion joined by PRICE, J.

In the Court of Appeals, the appellant argued that his arrest was illegal because article 14.03 of the Texas Code of Criminal Procedure does not give the officers involved authority to make an investigative stop outside of their jurisdiction. In a lengthy opinion, the court held that the appellant was correct, and therefore, his arrest was illegal. Under an alternative theory offered by the State, the Court of Appeals also declared that the arrest was not valid under the doctrine of "hot pursuit." They reasoned that the police never initiated a pursuit within their jurisdiction. The court then granted the appellant's point of error concerning his pretrial motion to suppress.

The State Prosecuting Attorney brought a Petition for Discretionary Review to this Court. Its sole ground for review stated:

Must law enforcement officers intend to detain an intoxicated driver within their jurisdiction in order to later detain him outside their jurisdiction under the "hot pursuit" doctrine?

What the short answer to this question should be is: Sure. What the majority says instead is that the arrest was valid because the police officers had formed some "suspicion," about the appellant's conduct within their jurisdiction. The majority draws this conclusion from alternative language of *Minor v. State*, 153 Tex.Crim. 242, 219 S.W.2d 467 (1949). This holding is pretty much of a stretch from "intend to detain," but it seems to be good enough for government work.

What the majority ignores is that the Court of Appeals had previously ruled that there was no pursuit by the police. The State Prosecuting Attorney did not ask us to decide whether the officers were involved in a hot pursuit of the appellant, rather only what mindset the officers needed to form while within their jurisdiction in order to legitimize the arrest outside their jurisdiction. The majority *presumes* that the officers were in hot pursuit, but that's a presumption that can't be considered absent a request by the State.

Judge Johnson's dissenting opinion does a good job of examining what has been considered to be "hot pursuit" in other cases. As you can see from her opinion,

the actions of the officers and the appellant in this case fall short of the requirements necessary to make it a "hot pursuit." But, unfortunately we were never called upon to answer this question.

What the State had to show to validate this "hot pursuit" arrest is twofold: (1) an intent to detain within their jurisdiction, and (2) a concerted effort to apprehend the suspect before he left their jurisdiction. They got somewhat close on one element, but who's counting? But, all this aside, the majority *still* reverses the Court of Appeals on the State Prosecuting Attorney's question that has little consequence to the lower court's ultimate ruling that the police never engaged the appellant in a pursuit. This is not only a generous gift, but it basically violates our rules of procedural default. Therefore, I respectfully dissent.

JOHNSON, J., joined by PRICE, J., filed a dissenting opinion.

We granted the State Prosecuting Attorney's sole question for review which asks,

> Must law enforcement officers intend to detain an intoxicated driver within their jurisdiction in order to later detain him outside their jurisdiction under the "hot pursuit" doctrine?

The Supreme Court "ha[s] long recognized that ... 'hot pursuit' cases fall within the exigent-circumstances exception to the warrant requirement." *Steagald v. U.S.*, 451 U.S. 204, 218, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981). A warrantless search or arrest may be authorized when the police are in hot pursuit of a suspect. *U.S. v. Santana*, 427 U.S. 38, 42–43, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976)("The District Court was correct in concluding that 'hot

pursuit' means some sort of a chase."). Such hot pursuit also involves an immediate or continuous pursuit of the suspect from the scene of a crime. *Welsh v. Wisconsin*, 466 U.S. 740, 753, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984)("[T]he claim of hot pursuit is unconvincing because there was no immediate or continuous pursuit of the petitioner from the scene of a crime."). The Supreme Court has also said that there is no hot pursuit in the arrest of someone who was not in flight. *Johnson v. U.S.*, 333 U.S. 10, 16 n. 7, 68 S.Ct. 367, 92 L.Ed. 436 (1948)("[W]e find no element of 'hot pursuit' in the arrest of one who was not in flight, was completely surrounded by agents before she knew of their presence, ..., and who made no attempt to escape."). In *Vale v. Louisiana*, 399 U.S. 30, 35, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970), the Court found that a search was illegal in part because officers "were not in hot pursuit of a fleeing felon."

The "hot pursuit" doctrine involves a chase and pursuit of, *and flight by*, the suspect; i.e. an immediate continuous pursuit of and some effort by the suspect to escape. In this case, there was no chase, only an observation of appellant for the purpose of training the reserve officer. There was no showing that appellant made any effort to elude, flee, or escape from the officers. Webster's Encyclopedic Unabridged Dictionary (1989) defines "follow" as "to move behind in the same direction." "Pursue" means "to follow in order to overtake, capture ...; chase."[1] *Id.* "Chase" means "to pursue with intent to capture ...; hunt." *Id.* Chasing certainly involves following, but following does not necessarily mean chasing. In this case, the officers were following, but only with the intent to move behind appellant in the same direction. Any intent to capture was

---

1. The dictionary additionally includes definitions of pursuit in other contexts, specifically the act of striving, as in pursuit of happiness, and an activity, as a hobby or vocation, regularly engaged in.

not acted upon until the officers were outside their jurisdiction. They were thus not in hot pursuit, having the present intent not to overtake or capture, but only to follow for a time. Neither was appellant in flight.

While "hot pursuit" does not necessarily involve "an extended hue and cry about the public streets," it does indeed involve "some sort of a chase." *Santana, supra,* 427 U.S. at 42–43, 96 S.Ct. 2406. "Hot pursuit" indicates that there is some exigency about the chase. In this case, there was certainly no exigency; the officers chose to follow and observe appellant rather than stop him immediately, and appellant did not flee nor attempt to elude them.

The facts of this case do not demonstrate a "hot pursuit" situation. The court of appeals was correct in concluding that "there was no 'pursuit' initiated within the officer's jurisdiction." *Yeager v. State,* 23 S.W.3d 566, 576 (Tex.App.-Waco 2000). Because there was no "pursuit," there could be no "hot pursuit," and the State Prosecuting Attorney's request for relief should be denied. Because the majority does not do so, I respectfully dissent.