IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 0070-02






JOSE FRANCO ARMENDARIZ, Appellant



v.



THE STATE OF TEXAS






ON DISCRETIONARY REVIEW


FROM THE EIGHTH COURT OF APPEALS


ECTOR COUNTY






 Womack, J., filed a concurring opinion.



 While I join the Court's opinion, I wish to point out a more significant question on
which we granted review, but which the Court's opinion does not reach: the authority of
municipal police officers to arrest outside their cities.

 This court confronted the question in 1987 in Angel v. State. (1) Police officers of the
City of Tomball stopped Angel outside the city limits on August 29, 1983. They learned
that warrants for his arrest were outstanding, and one of them saw evidence that made him
think that Angel's vehicle had been "hot wired," so they arrested him. At his trial for felony
theft, he objected to the evidence on the ground that it was illegally seized by officers who
had no authority to stop or arrest him "outside the jurisdiction of authority." (2) The trial court
overruled the objection. The court of appeals rejected his argument and affirmed the
judgment of conviction.

 In this court an opinion by Judge Campbell announced the judgment that affirmed the
judgments of the courts below. After setting out the facts and the procedural history in
Parts I and II, the opinion addressed two questions. In Part III, the opinion held that the State
had "waived" the right to challenge Angel's standing to complain of the seizures by not
raising the question in the court of appeals. (3) That part of the opinion was joined by only one
other judge, (4) with a third judge concurring in the result. (5)

 In Part IV, Judge Campbell's opinion addressed the authority of the Tomball officers
to arrest outside the city limits. The opinion looked to Articles 998 and 999 of Vernon's
Texas Civil Statutes Annotated. Article 998 said that the city or town council in any city or
town "incorporated under the provisions of this title" (not otherwise identified in the
opinion) may provide for the appointment of police officers, who "shall have like powers,
rights, authority and jurisdiction as are by said title vested in city marshals." (6) In turn,
Article 999 said of the city marshal, "In the prevention and suppression of crime and
arrest of offenders, he shall have, possess and execute like power, authority and
jurisdiction as the sheriff." (7) The opinion noted that a sheriff was "a conservator of the
peace in his county . Art. 2.17, V.A.C.C.P. (1977). A sheriff's jurisdiction, therefore, is
county-wide. Because a city police officer's jurisdiction for arresting offenders parallels a
sheriff's jurisdiction, see Arts. 998 & 999, supra, it appears that a city police officer's
jurisdiction is county-wide." (8) The opinion held that those articles "grant city marshals and
city police officers county-wide jurisdiction to arrest offenders." (9) It also said that prior
decisions of the court, which were to the contrary, were overruled. (10)

 I do not believe that Angel can be relied on to decide the question of the authority of
police officers to arrest outside their cities today. For one thing, Judge Campbell's opinion
on that question was not joined by any other member of the court. One judge was recorded
simply as "concurs in result." (11) The other three members of the court who joined the
judgment of affirmance dissented from Part III of Judge Campbell's opinion, and said,
"Otherwise, [they] concur in the result." (12) Four judges dissented. (13)

 Plurality opinions from this court were common before 1997, (14) and the lead
opinions did not inform the reader whether they were opinions of the court. In fact, the
reader might have to leaf through several opinions, looking for the various places in which
the individual judges' decisions might be recorded. Readers and publishers might notice
that a lead opinion was not an opinion of the court, but they might not. In the Angel case,
for example, the syllabus and headnotes of the West Publishing Company's report did not
mention that the lead opinion was that of Judge Campbell with one judge concurring as to
Part III, and four judges concurring in the result as to Part IV. (15)

 As we have said before, plurality opinions have limited (or even no) precedential
value. (16) When an opinion that announced the judgment of the court was not joined by any
other member of the court, we have been free to reexamine its reasoning and to say whether
it can be regarded as correct. (17) We granted review to do so in this case. (18) I think that Judge
Campbell's opinion did not address the statutes correctly, and the amendment of the
controlling statutes in 1995 has made its persuasive authority even less.

 Judge Campbell based his opinion in Angel on language in two articles of the civil
statutes. The basic flaw in this approach is that, as a dissenting opinion pointed out, it did
not take into account whether those statutes applied to the kind of municipality in
question. (19)

 There are three species of municipal corporations in Texas, categorized according
to the manner of their creation: general-law cities (of which there are three types -- A, B,
and C), home-rule cities, and cities chartered by special legislation. (20) The various statutes
that grant their authorities were codified in the Local Government Code in 1987. (21)

 When the Tomball officers arrested Angel in 1983, Articles 998 and 999 of
Vernon's Civil Statutes (the specific statutes on which Judge Campbell's opinion in Angel
relied) were in Title 28, Chapter 1 of the Civil Statutes. The "Articles of this chapter have
application only to general law cities." (22) Articles 998 and 999 did not apply to home-rule or
special-law municipalities.

 Home-rule cities were authorized, by an article in Chapter 13, "To provide for
police and fire departments." (23) 

 Home-rule cities have the mere statutory authority to "provide for a police
department." (24) Whatever extraterritorial authority that may be granted to
[home-rule-city] officers pursuant to a [home-rule-city] charter cannot, of
course, be in conflict with the general laws of the state which conclude that a
[home-rule-city] policeman, as a peace officer, has the duty "to preserve the
peace within his jurisdiction." (25) There has never been a statute comparable to
that applicable to a Type A general-law municipalities that gives officers the
same county wide authority as sheriffs. (26)


It may be added that a home-rule municipality also may police certain areas owned by and
located outside the municipality. (27) In a Type B general-law municipality, the marshal has the
same power within the municipality that a constable has within a precinct. (28) In a Type C
municipality, the governing body may appoint police officers that it considers necessary
and may define the duties of the officers. (29)

 Insofar as Judge Campbell's opinion said that Articles 998 and 999 could authorize
officers of any kind of municipality to arrest outside the limits of their cities, it was simply
incorrect. Some courts of appeals have recognized that the holding of his opinion cannot be
applied to officers of all types of cities. (30)

 A second reason why Angel cannot be authoritative today is that Articles 998 and
999 have changed. They were repealed, effective September 1, 1987, (31) and replaced by
sections 341.001 and 341.021 of the Local Government Code. Those sections apply only
to the police force and the marshal, respectively, of a Type A general-law municipality. (32) In
1995, those sections were amended to give the officers of those cities the same powers
and jurisdiction that the Code of Criminal Procedure gives peace officers. The amending
act said:

 Section 341.001(e), Local Government Code, is amended to read as follows:


 (e) A police officer has:


 (1) the powers, rights, duties, and jurisdiction granted to or imposed on a
peace officer by the Code of Criminal Procedure [of a marshal of a Type A
general-law municipality]; and


 (2) other powers and duties prescribed by the governing body. (33)


 Section 341.021(e), Local Government Code, is amended to read as follows:


 (e) The marshal has the same power and jurisdiction as a peace officer under the
Code of Criminal Procedure [the county sheriff] to execute warrants, to prevent and
suppress crime, and to arrest offenders. The marshal has other powers, not
inconsistent with state law, that the governing body confers by ordinance. (34)


 The act had one other section, which added subsection (g) to article 14.03 of the
Code of Criminal Procedure:

 (g) A peace officer who is listed in Subdivision (1), (2), (3), or (4), Article
2.12, is licensed under Chapter 415, Government Code, and is outside of the
officer's jurisdiction may arrest without a warrant a person who commits any
offense within the officer's presence or view, except that an officer who is
outside the officer's jurisdiction may arrest a person for a violation of the
Uniform Act Regulating Traffic on Highways (Article 67091d, Vernon's
Texas Civil Statutes) only if the officer is listed in Subdivision (4), Article
2.12. A peace officer making an arrest under this subsection shall as soon as
practicable after making the arrest notify a law enforcement agency having
jurisdiction where the arrest was made. The law enforcement agency shall
then take custody of the person committing the offense and take the person
before a magistrate in compliance with Article 14.06. (35)

 

The peace officers who were listed in Article 2.12(1)-(4) were sheriffs and their deputies,
constables and deputy constables, marshals or police officers of an incorporated city or
town or village, and rangers and officers of the Department of Public Safety. Subsection (g)
was amended in 1999 to add a fifth class of officers (the investigators of the district
attorneys', criminal district attorneys', and county attorneys' offices) and to change the
reference from "Uniform Act [etc.]" to "Subtitle C, Title 7, Transportation Code." (36) Other,
minor amendments have been made.

 Taken as a whole, the 1995 act (as amended in 1999) affected the law in four ways.
(1) It gave five classes of peace officers authority to arrest outside their jurisdictions for
offenses, other than certain traffic offenses, that were committed within the officer's
presence or view. (2) By negative implication, it denied to all other classes of peace
officers authority to arrest outside their jurisdictions for offenses that were committed
within the officer's presence or view. (3) It gave only rangers and officers of the
Department of Public Safety authority to arrest for certain traffic offenses if they were
outside the officer's jurisdiction. (4) It gave the officers of Class A general-law
municipalities the same power and authority as peace officers are generally given under the
Code of Criminal Procedure.

 When this statute, as it has been amended, is considered together with the provisions
of the Local Government Code, today's answer to the question in Angel, and the question in
this appeal of which we granted review but that we have not addressed, would seem to be
that a peace officer does not have authority to arrest outside the officer's jurisdiction
unless (1) the offense is committed within the officer's presence or view, and (2) the
offense is under some statute other than Transportation Code Title 7, Chapter C, and (3) the
officer is licensed under Government Code Chapter 415, and (4) the officer is:

 (a) a sheriff, or a sheriff's deputy, or a reserve deputy with a certain licence;


 (b) a constable, or a deputy constable, or a reserve deputy with a certain license;


 (c) a marshal or police officer of an incorporated city, town, or village, or a reserve
officer with a certain license, and the municipality is:


 (1) a Type A general-law city,


 (2) a Type B general-law city,


 (3) a Type C general law city (unless the governing body has defined the
officer's duty so as not to include that authority),


 (4) a home-rule city, or


 (5) a special-law city (unless the statute that created the city, the charter, or
the governing body acting under that statute and charter, has defined the
officer's duty so as not to include that authority);


 (d) a ranger or officer of the Department of Public Safety; or


 (e) an investigator of the office of a county attorney, a district attorney, or a
criminal district attorney.


A ranger or officer of the Department of Public Safety has the additional authority to arrest
outside the officer's jurisdiction for an offense under Transportation Code Title 7, Chapter
C, if the offense is committed in the officer's presence or view.

 Some courts of appeals have recognized that the 1995 amendments have made
obsolete the holding in Judge Campbell's opinion in Angel. (37)

 Of course, the proper consideration of the statutes does not end the analysis in every
case. For example, our decisions have recognized a doctrine of "hot pursuit" that allows an
officer who begins to pursue a suspect within the boundary of a municipality to continue
the pursuit and effect an arrest outside the boundary. (38)

 The Court has not reached this issue in this case because it disposed of the appeal by
holding that the arrest was made, in effect, by a deputy sheriff who had county-wide
authority, and that the trial court did not err in admitting the evidence that was obtained
from the arrest. I join the Court's opinion.


En banc.

Delivered December 10, 2003.

Publish.
1. 740 S.W.2d 727 (Tex. Cr. App. 1987).
2. Id., at 728-29.
3. Id., at 730.
4. See id., at 736 ("Duncan, J., joins in part III ").
5. See id., at 748 (dissenting opinion of Miller, J.) ("I concur in the result reached as to the
standing issue ").
6. Id., at 732, n.13 (emphasis in original).
7. Ibid. (emphasis in original).
8. Id., at 735 (emphasis in original).
9. Id., at 736.
10. Ibid.
11. See Angel, 740 S.W.2d, at 736 ("White, J., concurs in result").
12. Angel, 740 S.W.2d 736, 739 (concurring and dissenting opinion of McCormick, J., joined
by Onion, P.J., and Davis, J.).
13. See Angel, 740 S.W.2d, at 736 ("Teague, J., dissents. Duncan, J., joins in part III and
dissents to part IV"), 739 (dissenting opinion of Clinton, J., joined by Teague, J.), 748 (opinion of
Miller, J., concurring in result reached concerning the standing issue, and dissenting to the jurisdiction
holding).
14. Of the cases in which this court ordered its opinions published in State Fiscal Year 1996,
nineteen per cent were decided without an opinion of the court. Since 1997 the number has been less
than one per cent.
15. See Angel, 740 S.W.2d, at 727.
16. E.g., Cooper v. State, 67 S.W.3d 221, 224 (Tex. Cr. App. 2002).
17. See Ex parte Anderer, 61 S.W.3d 398, 402-05 (Tex. Cr. App. 2001).
18. "The continued viability of Angel is squarely presented in Armendariz v. State, 02-0070,
which is currently pending in this Court." Yeager v. State, 104 S.W.3d , 105 n.2 (Tex. Cr. App.
2003).
19. See Angel, 740 S.W.2d, at 739 (Clinton, J., dissenting).
20. David B. Brooks, 22 Texas Practice -- Municipal Law & Practice § 3.03 (2d ed.
1999). See Tex. Local Gov't Code, ch. 5:


"Subchapter A. Types of Municipalities



"Section

"5.001. Type A General-Law Municipality.

"5.002. Type B General-Law Municipality.

"5.003. Type B General-Law Municipality.

"5.004. Home-Rule Municipality.

"5.005. Special-Law Municipality."

 
21. Act of May 21, 1987, 70th Leg., R.S., ch. 149, § 1, 1987 Tex. Gen. Laws 707, 707.
22. Trueman O'Quinn, History, Status, and Function of Cities, Towns and Villages, in 2A
Vernon's Annotated Revised Civil Statutes of the State of Texas xiii, xxix (1963).
23. Vernon's Annotated Civil Statutes art. 1175(27) (1963). 
24. [Tex. Local Gov't Code] § 341.003.
25. [Tex. Code Crim. Proc. art.] 2.13.
26. David B. Brooks, 23 Texas Practice -- Municipal Law & Practice § 14.09 (2d ed.
1999) (footnotes in original, renumbered).
27. Tex. Local Gov't Code § 341.903 ("parks and grounds, lakes and land contiguous ,
speedways and boulevards").
28. Id., § 341.022(a).
29. Id., § 341.002.
30. See Yeager v. State, 23 S.W.3d 566, 570 n.3 (Tex. Cr. App. -- Waco 2000), reversed
on other grounds, 104 S.W.3d 103 (Tex. Cr. App. 2003); Reichaert v. State, 830 S.W.2d 348
(Tex. App. -- San Antonio 1992, pet. ref'd)..
31. Id., § 49(1), 1987 Tex. Gen. Laws at 1306 ("The following laws are repealed: (1) the
following articles and acts, as compiled in Vernon's Texas Civil Statutes:  998  999 "). 
32. Brooks, supra note 26, § 14.09 
33. Act of June 16, 1995, 74th Leg., R.S., ch. 829, § 2, 1995 Tex. Gen. Laws 4213, 4214.
34. Id., §3, 1995 Tex. Gen. Laws 4213, 4214.
35. Id., § 1, 1995 Tex. Gen. Laws 4213, 4213.
36. Act of May 24, 1999, 76th Leg., R.S., ch. 210, § 2, 1999 Tex. Gen. Laws 686, 686-87.
37. See Gerron v. State, 57 S.W.3d 568, 570 (Tex. App. -- Waco 2001), vacated on other
grounds, 97 S.W.3d 597 (Tex. Cr. App. 2003); Hoitt v. State, 28 S.W.3d 162, 165 (Tex. App. --
Texarkana 2000), pet. dism'd); Preston v. State, 983 S.W.2d 24, 26 (Tex. App. -- Tyler 1998).
Contra, Brother v. State, 85 S.W.3d 377, 385 n.7 (Tex. App. -- Fort Worth 2002).
38. See, e.g., Yeager v. State, 104 S.W.3d 103 (Tex. Cr. App. 2003).