IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 1397-03






THE STATE OF TEXAS



v.



MATTHEW WAYNE KURTZ, Appellee





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FIFTH COURT OF APPEALS


COLLIN COUNTY





 Holcomb, J., filed a dissenting opinion.


O P I N I O N 



 I respectfully dissent. I have no argument with the majority's holding that an officer
outside his jurisdiction cannot arrest for mere traffic offenses. But the majority's holding
today means that an officer outside his jurisdiction cannot stop and detain a person when the
officer witnesses traffic offenses which in themselves also give rise to reasonable suspicion
that a felony, a violation of Chapter 42 or 49 of the Penal Code, or a breach of the peace is
taking place. (1) This is contrary to the statute and well-settled state and federal jurisprudence;
therefore, I dissent. 

 The reasons I must dissent are threefold: (1) the trial court abused its discretion
because its conclusions of law are erroneous; (2) the State was justified when it argued article
14.03(g) does not prohibit any peace officer from conducting an investigative detention
outside his jurisdiction when traffic offenses committed in his view supply reasonable
suspicion that a breach of the peace or an intoxication offense is afoot; (2) and (3) the Legislative
history of the statute belies a construction that would prohibit extra-jurisdictional stops
anywhere in the state, except when an arrest is made for traffic offenses. 

I. The trial court's conclusions of law are erroneous

 I take issue with the following excerpt of the trial court's conclusions of law: 

 Boyd admitted he found probable cause for the DWI arrest only after
completing the field-sobriety tests, which means he did not observe a DWI
offense before then; he observed only events which might cause a reasonable
suspicion of DWI. The only possible offenses Boyd may have initially observed
Kurtz commit outside the Plano city limits were traffic offenses, i.e., failure to
maintain a single lane and driving on the improved shoulder of a highway. Under
article 14.03(g), Boyd could not legally stop Kurtz for these violations, unless
some other provision of the law applied." (emphasis added).

 Based upon this reasoning, the trial court abused its discretion in suppressing the
evidence because it clearly misstates the law. 

 An abuse of discretion with respect to factual matters occurs if the record establishes
the trial court could reasonably have reached only one decision and it failed to do so. (3) As to
the determination of controlling legal principles, an abuse of discretion occurs if the trial
court clearly fails to analyze or apply the law correctly. (4) A trial court has no discretion in
determining what the law is or applying the law to the facts. (5) Thus, a failure by a trial court to
analyze or apply the law correctly will constitute an abuse of discretion. (6) At the
suppression hearing, Officer Boyd testified as follows: 

Officer Boyd: My first observation of Mr. Kurtz's vehicle was traveling west or
southbound on State Highway 121. I observed the vehicle cross from the
right-hand lane onto the improved shoulder of westbound 121 and travel
on the improved shoulder for several seconds. I then observed the
vehicle cross back over on to the right-hand lane on several occasions
and ultimately correct itself back into the right-hand lane where I made
a traffic stop. 


*******


The State: And you first observed Mr. Kurtz move from his lane of traffic to the
improved shoulder? 


Officer Boyd: He moved from the far right-hand lane onto the right-hand improved
shoulder of 121. 


The State: Can you describe the location of his car with respect to the lane of
travel? 


Officer Boyd: Initially, it was in the far right-hand lane...The shoulder is paved with a
solid white line separating the shoulder itself from the right-hand lane of
traffic.

The State: Did his vehicle drift completely onto the shoulder? 

 

Officer Boyd: The vehicle traveled from the right-hand lane completely onto the
improved shoulder and traveled in the improved shoulder for several
seconds. 


The State: When you say several seconds, do you have any more clear idea of how
long that was? 


Officer Boyd: Between three to five seconds, I would say.


The State: And after you observed the vehicle travel on the improved shoulder for
three to five seconds, what did you next observe?


Officer Boyd: I observed the vehicle cross back over into the right-hand lane on several
occasions as if the driver was actually traveling in the shoulder and then
drifting into the right-hand lane. 


The State: Were those maneuvers unsafe? 


Officer Boyd: In my opinion they were, yes.


The State: Were there any other vehicles on the road at that time? 


Officer Boyd: ... There was one vehicle that was parked to the right of the improved
shoulder facing west off to the side of westbound 121.


The State: There was a vehicle parked on the shoulder? 


Officer Boyd: It was actually just off the improved shoulder I believe.


The State: ... Did you observe Mr. Kurtz's vehicle come close to the vicinity of that
vehicle? 


Officer Boyd: Fairly close, yes, ma'am.


The State: Was his driving pattern in a normal fashion? 


Officer Boyd: No, it was not.


The State: Would you consider it erratic? 


Officer Boyd: I would.


[Objection as to leading sustained by the trial court]


The State: How would you describe his driving behavior? 


Officer Boyd: Unsteady. I would consider it unsafe.


The State: And for what reasons?


Officer Boyd: He was driving on an area of the roadway that was not intended for
vehicular travel. His vehicle did not maintain a single lane in a steady
fashion. He also appeared to cross over from a traveling lane of traffic
onto the improved shoulder as if he wasn't able to keep his vehicle in a
single lane. 


The State: How many times in total did you see him cross the line into another lane
of traffic?


Officer Boyd: The report indicates several. I'm not sure exactly how many.


The State: So several would be more than once? 


Officer Boyd: Most definitely. I would say more than twice.


The State: After you observed this behavior, what did you do? 


Officer Boyd: I initiated a traffic stop...


The State: And on what basis did you initiate the stop?


Officer Boyd: On the basis of driving on improved shoulder of State Highway 121.


The State: Did you make contact with Mr. Kurtz?


Officer Boyd: Yes, I did.


The State: And did you observe anything upon making contact with him? 


Officer Boyd: I noticed a strong odor of an alcoholic beverage coming from his person
immediately. I had brief contact with him while he was seated in the
vehicle. I noticed that his speech was slurred, heavy tongue.


 Officer Boyd further testified he conducted some field sobriety tests and then arrested
appellant for driving while intoxicated. On cross examination, defense counsel elicited the
following testimony, in pertinent part: 

Defense counsel: Does your report reflect that prior to the stop you suspected driving
while intoxicated? 


Officer Boyd: No, sir.


Defense counsel: Had you seen Mr. Kurtz earlier that day?


Officer Boyd: No, sir.


Defense counsel: Had you smelled his breath [prior to the stop]?


Officer Boyd: No, sir.


Defense counsel: Had you given him any field sobriety tests or seen him walk or turn or do
anything to give you any indicia of intoxication? 


Officer Boyd: Not prior to the stop, no, sir.


Defense counsel: So it was only the driving across the line and nothing else that you had of
anything that might cause you to suspect that; is that correct? 


Officer Boyd: That's correct.


 The totality of this testimony authorized a Terry (7) stop, regardless of the exception in
article 14.03 (g), which as explained below, does not apply to offenses against the Penal Code.
 (8) Yet, the trial court concluded: "[Officer Boyd] observed only events which might cause a
reasonable suspicion of DWI." It is well-settled that an officer may stop a motorist when the
officer has reasonable suspicion of DWI based on traffic offenses. (9) And, when the trial court
concluded"[t]he only possible offenses Boyd may have initially observed Kurtz commit outside
the Plano city limits were traffic offenses," it erred in applying only Subsection (g) because
it overlooked Subsection (d), which, in my view, ultimately controls. (10) That is, the very
offenses witnessed by Officer Boyd were enough to create reasonable suspicion that appellant
was driving while intoxicated. (11) I am further puzzled by the following conclusion: "Under
article 14.03(g), Boyd could not legally stop Kurtz for these violations, unless some other
provision of the law applied." To its credit, the trial court got the emphasized portion
correct, but failed to carry out an application of Subsection (d), which clearly authorizes an
investigative detention. 

 Thus, in my view, the ultimate issue in this case is whether the trial court abused its
discretion in concluding that Officer Boyd could not effect a Terry stop outside his
jurisdiction under Subsection (d) due to the provisions of Subsection (g). It is clear to me that
the exception in Subsection (g) would only come into play if Officer Boyd had arrested
appellant for the traffic offenses. Appellant was not arrested for mere traffic offenses; he was
arrested for driving while intoxicated; therefore, the stop was proper under Terry and
Subsections (d) and (g). So, not only did the trial court fail to apply long-standing principles
of law by incorrectly concluding that Subsection (g) prevents a Terry stop for DWI based on
erratic driving, the trial court clearly erred when it suppressed the evidence after determining
that, "he observed only events which might cause a reasonable suspicion of a DWI." As set
forth infra, ¶ II, the law has long authorized Terry stops for DWI based upon traffic offenses
and the officer's community caretaking function. (12) 

 Additionally, the trial court was incorrect in concluding that "Boyd admitted he found
probable cause for the DWI arrest only after completing the field sobriety tests, which means
he did not observe a DWI offense before then...." I find this conclusion erroneous for three
reasons.

 First, a trial court is not confined by the conclusions of a witness. The finder of fact
may defer to the conclusions of a fact witness, but suppression law is not bound by the
"admissions" of fact witnesses. (13) We have held that the subjective intent of the officer
conducting the stop is irrelevant. (14) Further, an objectively valid stop may be upheld even if
made for an improper reason. (15) A court's review is not limited to the violations an officer lists
in making the stop; the test is whether the articulated facts about which the officer testified
would, in light of the officer's experience and personal knowledge, together with inferences
from those facts, warrant a reasonable person to believe that a violation had occurred. (16) Thus,
as a basis for the trial court's conclusion that the extraterritorial stop was improper, Officer
Boyd's "admission" was not controlling. (17) 

 Second, I do not understand what the trial court means by "he did not observe a DWI
offense before then . . . " There is no set category of facts which give rise to a reasonable
suspicion of DWI. (18) Subsection (g) only limits arrests for traffic violations. If construed
otherwise, Subsection (d) and the clear authority under Subsection (g) to make extra-territorial
stops for offenses under the Penal Code, would be rendered meaningless. Specifically, if an
officer were not allowed to effect a stop to investigate an offense under Subsection (d) simply
because the reasonable suspicion was based on witnessing various traffic offenses, it would
undermine well-established law and subvert the purposes and intent of Subsection (d). For
example, violations of Chapter 49 are almost always evidenced by traffic offenses, such as
failure to maintain a lane or failure to stop at a traffic light. (19) Under certain circumstances
then, simple traffic violations may, in and of themselves, authorize an investigative detention
outside one's jurisdiction. (20) The statute does not prohibit a stop supported by reasonable
suspicion that any felony or other violation listed under 14.03(d) is taking place simply
because a city officer, outside his jurisdiction, witnesses only traffic offenses. Therefore, the
exception in Subsection (g) does not mean that an officer has to actually witness a person drink
excessively, climb behind a wheel, and drive. On the contrary, there are many acts that fall
short of this example which provide reasonable suspicion that a person is driving drunk. 

 Third, finding probable cause after an initial stop does not run afoul of the law--in fact,
long-standing precedent clearly authorizes it. (21) The reasonable suspicion required to detain
is a much lower standard than what is required for probable cause to arrest. (22) Thus, whether
Officer Boyd had probable cause to stop appellant was irrelevant, because Boyd did not need
probable cause to do so; rather, he needed only a reasonable suspicion based upon articulable
facts. So, as in the usual DWI case, probable cause to arrest was not established until after an
investigatory detention when Officer Boyd conducted field sobriety tests and smelled the odor
of alcohol. (23)

 Considering the unimpugned testimony of Officer Boyd, I would conclude that the trial
court abused its discretion because it could reasonably have reached only one decision--that
the acts witnessed by Officer Boyd supplied reasonable suspicion to effect a Terry stop for
DWI under both Subsections (d) and (g). Appellant was driving erratically during the early
hours of the morning. (24) Therefore, I would find that the trial court abused its discretion
because such facts point to only one decision: that the actions of appellant gave rise to a
reasonable suspicion that criminal activity-other than mere traffic violations-was afoot. 

II. Article 14.03(g) does not prevent an extraterritorial stop based on reasonable suspicion
of crimes against the Penal Code and those listed in article 14.03(d)


 As explained above, the trial court misconstrued the law: Officer Boyd was not bound
by the exception in Subsection (g) because he did not arrest appellant just for traffic violations. 
Officer Boyd lawfully stopped appellant based on reasonable suspicion of DWI, and upon
further investigation, found probable cause to arrest for DWI. (25) Officer Boyd's actions did not
run afoul of the statute or case law. (26) Again, Subsection (g) authorizes a peace officer outside
his jurisdiction to make a warrantless arrest when a person commits any offense within the
officer's presence or view, except for traffic offenses. Tex. Code Crim. Proc. Ann. art
14.03(g). To hold otherwise would undermine the plain meaning of the statute and well-seasoned principals of state and federal law. (27) 

 A police officer may stop and briefly detain an individual for investigative purposes on
less information than would be required to support a probable cause determination. (28) Indeed,
circumstances short of probable cause for an arrest may justify temporary detention for the
purpose of investigation because an investigation is considered to be a lesser intrusion upon
the personal security of the individual. (29) The authority to detain a citizen based on reasonable
suspicion is a judicial doctrine grafted onto the statutory authority to arrest for probable
cause. (30) That is, an investigative detention is widely accepted as part of the authority to arrest. (31)
 To justify such a stop, the officer must have observed specific, objective, articulable facts
which, in light of the officer's experience and personal knowledge, together with inferences
from those facts, would warrant a reasonable person to believe that a criminal violation had
occurred. (32) Reasonable suspicion requires that there is something out of the ordinary
occurring and some indication that the unusual activity is related to crime. (33) 

 Most importantly, it is not necessary that the conduct violate a particular statute in
order to give rise to reasonable suspicion. (34) That is, an activity observed by an officer need not
be a crime in itself to justify an investigative detention; it need only be sufficient to create a
reasonable suspicion that some activity out of the ordinary was occurring or had occurred, that
the defendant had a connection to this activity, and that the activity was related to a crime. (35) 
Therefore, even though the conduct witnessed by Officer Boyd were but mere traffic
violations, they were sufficient to support reasonable suspicion of driving while intoxicated. (36) 
It should not matter what appellant did, whether he violated a traffic law or whether he did some
other act in Officer Boyd's view, as long as the conduct supported a reasonable suspicion that
appellant was driving while intoxicated. (37) The majority incorrectly focuses on violations of
the traffic laws to conclude the extra-territorial stop was improper. But because appellant need
not have violated any law to support reasonable suspicion, the majority's logic is unsound. 
Namely, why should the violation of traffic laws, as a basis for reasonable suspicion of DWI,
trigger the exception in Subsection (g), when some other suspicious behavior that is not a
violation of any law, authorize an extra-jurisdictional arrest under Subsection (d)? The stop
was proper only because the conduct was sufficient to warrant a reasonable person to believe
that appellant was driving drunk. (38) As such, the exception in Subsection (g) does not effect the
outcome of this case, and the majority's relegation to it is improper. 

 I would conclude that Officer Boyd's action was objectively reasonable to stop
appellant based on the "specific and articulable facts which, taken together with rational
inferences from those facts, warranted" (39) reasonable suspicion of DWI, not that an officer
outside his jurisdiction cannot develop reasonable suspicion for DWI upon witnessing traffic
offenses. (40) "It would have been poor police work indeed" for Officer Boyd "to have failed to
investigate this behavior further" and allow appellant to drive on into the night simply because
Subsection (g) prevents arrests for traffic offenses outside an officer's jurisdiction. (41) In sum,
the exception in Subsection (g) does not disturb the boundaries of Terry and corresponding
state law when considering offenses against the Penal Code. Thus, Terry and its progeny
should prevail and remain an empirical question for the finder of fact when evaluating the
testimony of officers patrolling outside their jurisdictions. (42) 

III. The Legislative Intent of the Statute Does Not Support the Majority's Conclusion

 Considering the foregoing conclusions in the backdrop of Subsection (d), Terry, and
its progeny, it is easy to see that the trial court's conclusions are illogical, misstate the law,
and moreover, run counter to the Legislative intent of article 14.03(d). 

 I am persuaded by Justice Fitzgerald's dissent, which concludes the Legislature intended
to broaden rather than restrict a peace officer's power to arrest outside his or her jurisdiction,
unless of course, the arrest is for traffic violations. (43) Accordingly, I would go one step further
and conclude that the Legislative intent of the statute supports a construction that any peace
officer anywhere in the state could have made this stop. Therefore, whether a municipality
is either type-A or type-B is irrelevant. And, it is my belief that the Legislature passed
Subsection (d) for just that reason--to afford more protection to citizens across the state
regardless of what type municipality they reside in by allowing an officer outside his
jurisdiction to arrest for anything under Subsection (d), but expressly excluding petty traffic
offenses as intended by Subsection (g). In short, the majority's holding here subverts the plain
meaning of the statute and would lead to absurd results that the Legislature could not have
possibly intended. (44) 

Conclusion

 Based on the reasoning set forth herein, I would reverse the court of appeals and remand
the cause for trial on the merits. 

FILED: OCTOBER 20, 2004.

PUBLISH





 
1. Tex. Code Crim. Proc. Ann. art. 14.03(d),(g) (Vernon Supp. 2004). 
2. Subsection (g) clearly authorizes extra-territorial stops based on offenses against
the Penal Code. The statute provides, in pertinent part, as follows:

 "A peace officer...who is licensed under the Government Code, and is outside of
[his] jurisdiction may arrest without a warrant a person who commits any offense within the
officer's presence or view, except that an officer outside the officer's jurisdiction may
arrest a person for a violation of [the Transportation Code] only if [he is a Ranger or an
officer with the TDPS]." Tex. Code Crim. Proc. Ann. art 14.03(g)(emphasis added).
3. Johnson v. Fourth Court of Appeals, 700 S.W.2d 916, 918 (Tex.1985). If a trial court's
findings are supported by the record, an appellate court is not at liberty to disturb them. Etheridge v.
State, 903 S.W.2d 1, 15 (Tex. Crim. App. 1994). However, the trial court here makes no findings
relating to the observations of appellant's driving, but simply recites the facts in the court's conclusions
of law. 
4. State v. Ballard, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999) 
5. Id.
6. Id. 
7. Terry v. Ohio, 392 U.S. 1 (1968).
8. Tex. Code Crim. Proc. Ann. art 14.03(g); United States v. Arvizu, 534 U.S. 266
(2002); Balentine v. State, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). 
9. Fatemi v. State, 558 S.W.2d 463, 466 (Tex. Crim. App. 1977) (finding no specific,
articulable facts to justify detention); see e.g., Klare v. State, 76 S.W.3d 68, 75 (Tex. App.-Houston
[14th Dist.] 2002, pet. ref'd) (citing various factual circumstances that support or fail to create
reasonable suspicion of DWI under the totality of the circumstances). 
10. If Officer Boyd had failed to find probable cause appellant was driving while intoxicated
after the initial stop, but arrested appellant for only the traffic violations, then, Officer Boyd would have
run afoul of Subsection (g). But that did not happen. Rather, there was reasonable suspicion of DWI
based on the traffic offenses; probable cause was developed after smelling the alcohol and conducting
the field sobriety tests; and an arrest was made for DWI-not traffic offenses. Nothing here offends the
law.
11. It is important to note here that there is no indication in the record that the trial court, in its
discretion as the finder of fact, disbelieved Officer Boyd's testimony about what he witnessed appellant
do. On the contrary, the trial court's conclusions of law indicate that the officer's credibility was not in
question, and that the trial court accepted as true the events to which Officer Boyd testified. Therefore,
our review is de novo. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); Brother v.
State, 85 S.W.3d 377 (Tex. App.-Fort Worth 2002, pet. granted) (citing Carmouche v. State, 10
S.W.3d 323, 327 (Tex. Crim. App. 2000)). 
12. See Wright v. State, 7 S.W.3d 148, 152 (Tex. Crim. App. 1999); Terry, 392 U.S. at 29
("The sole justification of the search . . . is the protection of the police officer and others nearby. . . .");
Townsend v. State, 813 S.W.2d 181, 185 (Tex. App.--Houston [14th Dist.] 1991, pet. ref'd)
(weaving back and forth across three lanes at 2 a.m. is sufficient to raise a reasonable suspicion of
driving while intoxicated). 
13. Terry v. Ohio, 392 U.S. at 21-22 (applying an objective test).
14. Garcia v. State, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001).
15. Walter v. State, 28 S.W.3d 538, 543 (Tex. Crim. App. 2000).
16. Garcia, 43 S.W.3d at 530; Davis v. State, 947 S.W.2d 240, 242-43 (Tex. Crim. App.
1997).
17. See Garcia, 43 S.W.3d at 530.
18. Klare v. State, 76 S.W.3d at 72-77.
19. See Stone v. State, 703 S.W.2d 652, 654 (Tex. Crim. App. 1986);Cook v. State, 63
S.W.3d 924,928-29 (Tex. App.-Houston [14th Dist.] 2002, pet. ref'd) (finding weaving on the road
at 2:30 a.m. objectively reasonable to stop and detain for DWI); Townsend v. State, 813 S.W.2d at
185; Gajewski v. State, 944 S.W.2d 450, 452 (Tex. App.--Houston [14th Dist.] 1997, no pet.);
Fox v. State, 900 S.W.2d 345, 347 (Tex. App.--Fort Worth 1995, pet. improv. granted)
(reasonable suspicion existed when officer observed defendant weaving back and forth within his lane);
Raffaelli v. State, 881 S.W.2d 714, 716 (Tex. App.--Texarkana 1994, pet. ref'd); Barraza v.
State, 733 S.W.2d 379, 380 (Tex. App.--Corpus Christi 1987) (reasonable suspicion existed when
officer observed defendant weaving within his own lane and making two improper turns), aff'd, 790
S.W.2d 654 (Tex. Crim. App. 1990); Miffleton v. State, 728 S.W.2d 880, 883 (Tex. App.--Austin
1987) (reasonable suspicion existed based on defendant's rapid acceleration, weaving and excessive
speed), aff'd, 777 S.W.2d 76 (Tex. Crim. App.1989). 
20. See Viveros v. State, 828 S.W.2d 2, 4 (Tex. Crim. App. 1992).
21. Woods v. State, 956 S.W.2d 33, 35 (Tex. Crim. App. 1997); Stone v. State, 703 S.W.2d
at 654 (reasonable suspicion to stop based on weaving; probable cause to arrest based on field
sobriety tests, the smell of alcohol, and other facts.).
22. Arvizu, 534 U.S. at 273; Johnson v. State, 658 S.W.2d 623 (Tex. Crim. App. 1983);
Williams v. State, 621 S.W.2d 609 (Tex. Crim. App. 1981). 
23. See Stone v. State, 703 S.W.2d at 654-55.
24. Klare v. State, 76 S.W.3d at 73-74.
25. Berkemer v. McCarty, 468 U.S. 420, 437-40 (1984); Yeager v. State, 104 S.W.3d 103,
107 (Tex. Crim. App. 2003).
26. Terry v. Ohio, 392 U.S. at 10; Guzman, 955 S.W.2d at 90.
27. See id. We have held that, for purposes of warrantless arrests, Texas constitutional law
does not afford more protection than federal law. Rhodes v. State, 945 S.W.2d 115, 117 (Tex. Crim.
App. 1997).
28. Terry v. Ohio, 392 U.S. at 10; Guzman, 955 S.W.2d at 90.
29. Leighton v. State, 544 S.W.2d 394 (Tex. Crim. App. 1976).
30. See Johnson v. State, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995). 
31. See id.
32. See Davis v. State, 947 S.W.2d at 242-43; Valencia v. State, 820 S.W.2d 397, 400
(Tex. App.--Houston [14th Dist.] 1991, pet. ref'd). 
33. Davis, 947 S.W.2d at 244.
34. Terry, 392 U.S. at 22-23; Gajewski v. State, 944 S.W.2d at 452. 
35. See Martinez v. State, 29 S.W.3d 609, 611-12 (Tex. App.--Houston [1st Dist.] 2000,
pet. ref'd) (reasonable to stop driver on freeway when driver swerved briefly onto shoulder of road
and back in moderate to heavy traffic even though officer believed offense was failing to maintain a
single marked lane rather than driving on shoulder); Held v. State, 948 S.W.2d 45, 51 (Tex.
App.--Houston [14th Dist.] 1997, pet. ref'd) (weaving across several lanes sufficient to give rise to
reasonable suspicion that driver intoxicated; irrelevant whether weaving itself is or is not criminal event);
Raffaelli v. State, 881 S.W.2d at 716 (weaving within lane and speeding after exiting sufficient for
reasonable suspicion to stop vehicle).
36. See Terry, 392 U.S. at 5 (question of case is whether police may investigate suspicious
circumstances) (emphasis added). 
37. Terry, 392 U.S. at 22-23 (noting that Terry and his cohorts did not violate any laws, but
their actions, taken together, warranted further investigation).
38. See Davis v. State, 947 S.W.2d at 242-43; Cook v. State, 63 S.W.3d at 929. 
39. Terry, 392 U.S. at 21-22.
40. See Tex. Code Crim. Proc. Ann. art. 14.03 (g).
41. Terry, 392 U.S. at 23. The Fourth Amendment does not require police officers "to simply
shrug [their] shoulders and allow a crime to occur or a criminal to escape." Adams v. Williams, 407
U.S. 143, 145-46 (1972); Cook v. State, 63 S.W.3d at 929. 
42. See Terry, 392 U.S. at 29 (Fourth Amendment limitations will be developed in the concrete
factual circumstances of the individual case).
43. State v. Kurtz, 111 S.W.3d 315, 323-24 (Tex. App.--Dallas 2003). 
44. See Boykin v. State, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).